UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| HARRY DAVIS; RITA-MARIE GEARY; PATTY POOLE; and ROBERTA WALLACH, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs | ) ) | **12 CV 6134** |
| v. | ) ) | |
| NIRAV SHAH, individually and in his official capacity as Commissioner of the New York State Department of Health, | ) ) ) ) | |
| Defendant | ) ) ) | |

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

---

EMPIRE JUSTICE CENTER, INC.
1 West Main Street, Suite 200
Rochester, New York 14614
Telephone: (585) 454-4060

NATIONAL HEALTH LAW PROGRAM, INC.
101 East Weaver Street, Suite G-7
Carrboro, North Carolina 27510
Telephone: (919) 968-6308

Bryan Hetherington, Esq.
bhetherington@empirejustice.org

Sarah Somers, Esq.
*Pro Hac Vice* Application Pending
ssomers@healthlaw.org

Jonathan Feldman, Esq.
jfeldman@empirejustice.org

Jane Perkins, Esq.
*Pro Hac Vice* Application Pending
perkins@healthlaw.org

Geoffrey Hale, Esq.
ghale@empirejustice.org

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

Table of Contents ....................................................................................................................... i

Table of Authorities ................................................................................................................. iii

Preliminary Statement ............................................................................................................... 1

Statement of Facts ...................................................................................................................... 2

    I.        Background on the Medicaid Program .................................................................2

    II.      New York's Policy on Orthopedic Footwear and Compression Stocking ..............3

    III.    Plaintiff's Need for Orthopedic Footwear and Compression Stockings ..................4

           A.       Orthopedic Footwear is Medically Necessary for Plaintiff Harry Davis .....5

           B.       Orthopedic Footwear is Medically Necessary for Plaintiff Rita-Marie
                   Geary  ................................................................................................6

           C.       Compression Stockings are Medically Necessary for Plaintiff
                   Patty Poole ........................................................................................7

           D.       Compression Stockings are Medically Necessary for Plaintiff Roberta
                   Wallach ..............................................................................................8

Argument ..................................................................................................................................... 9

    I.        Standard for Preliminary Relief ...........................................................................9

    II.      Defendant's Failure to Cover Medically Necessary Orthopedic Footwear and
          Compression Stockings Causes Plaintiffs Irreparable Harm ..................................9

    III.    Plaintiffs are Likely to Succeed on the Mertis of Their Claims ...........................12

           A.       Coverage of Medically Necessary Orthopedic Footwear and
                   Compression Stockings Only for Medicaid Recipients Who Meet a
                   Predetermined Exception Violates the Home Health Services
                   Requirement of the Medicaid Act...............................................................12

           B.       Denial of Medically Necessary Orthopedic Footwear and
                     Compression Stockings Without an Individualized Exceptions
                   Process Violates the "Reasonable Standards" Requirement of the
                     Medicaid Act  ...............................................................................13

C.   Defendant's Policy to Cover Medically Necessary Orthopedic Footwear and Compression Stockings Only for those Medicaid Recipients with Certain Conditions and Not Others Violates the Comparability Requirement. .........................................................................16

D.   Defendant's Decision to Eliminate Coverage for Medically Necessary DME Without Notice and Without Informing Recipients of their Right to Request a Fair Hearing Violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution  and the Medicaid Act  ........................................................................................17

E.   Plaintiffs are Likely to Succeed on the Merits of their Claim that Defendant's are Violating the ADA and Section 504 of the Rehabilitation Act .......................................................................................19

1.   The ADA and Section 504 Prohibit Discrimination Against Individuals with Disabilities ..........................................................19

2.   The "Integration Mandate" of the ADA and Section 504 Prohibit Unjustified and Unnecessary Institutionalization ............20

3.   Defendant is likely Violating the ADA and Section 504 Methods of Administration Requirements....................................22

IV.   The Threat of Serious, Health-Related Injury to the Plaintiffs Clearly Outweighs Any Potential Harm to Defendant .........................................................23

Conclusion ........................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*Bell v. Agency for Health Care Admin.*, 768 So. 2d 1203, 1204 (Fla. Ct. App. 2000)............14, 16

*Bragdon v. Abbott*, 524 U.S. 624 (1998...................................................................................20

*Brantley v. Maxwell-Jolly*, 656 F. Supp. 2d 1161 (N.D. Cal. 2009).....................................10

*Brantwell v. Maxwell-Jolly*, 656 F. Supp. 2d 1161 (N.D. Cal. 2009)....................................2

*Catanzano by Catanzano v. Dowling*, 60 F. 3d 113 (2d Cir. 1995)......................................18

*DeSario v.Thomas*, 523 F. 3d 80 (2d Cir. 1998).................................................................15

*Disability Advocates v. Patterson*, 598 F. Supp. 2d 289 (E.D.N.Y.2009)...........................20

*Disability Advocates, Inc., v. Patterson*, 653 F. Supp. 2d 184 (E.D.N.Y. 2009)...............21

*Edmonds v. Levine*, 417 F. Supp. 2d 1323 (S.D. Fla. 2006)...............................................10

*Esteban v. Cook*, 77 F. Supp. 2d 1256 (S.D. Fla. 1999) ...................................................13

*Fisher v. Okla. Health Care Auth.*, 335 F. 3d 1175, 1183 (10th Cir. 2003) .....................21

*Goldberg v. Kelly*, 397 U.S. 254 (1970) ..............................................................................17

*Gorman v. Barnes*, 536 U.S. 181 (2002) .............................................................................20

*Haskins v. Stanton*, 794 F.2d 1273 (7th Cir. 1986)..............................................................23

*Henrietta D. v. Bloomberg*, 331 F. 3d 261, 290 (2d Cir. 2003)........................................9, 23

*Hern v. Beye*, 57 F. 3d 906, 910-11 (10th Cir. 1995) ........................................................14

*Herweg v. Ray*, 455 U.S. 265 (1982) ...................................................................................14

*Hiltibran v. Levy*, 793 F. Supp. 2d 1108 (W.D. Mo. 2011) ................................................14

*Hodges v. Smith*, 910 F. Supp. 646, 649 (N.D. Ga. 1995).................................................13

*Ill. Hosp. Ass'n v. Ill. Dep't of Public Aid*, 576 F. Supp. 360 (N.D. Ill. 1983)...............23

*Ladd v. Thomas*, 962 F. Supp. 284 (D. Conn. 1997) ...........................................................13

*Lankford v. Sherman*, 451 F. 3d 496 (8th Cir. 2006)......................................................14, 15, 16

*Lynch v. City of New York*, 589 F. 3d 94, 98 (2d Cir. 2009).................................................9

*Mayer v. Wing*, 922 F. Supp. 902 (S.D.N.Y. 1996)...........................................................18

*McMillan v. McCrimon*, 807 F. Supp. 475 (C.D. Ill. 1992) ...............................................10

*Morel v. Giuliani*, 9278 F. Supp. 622, 635 (S.D.N.Y. 1995)...............................................10

*Olmstead v. L.C.* 527 U.S. 581, 597 (1999)...........................................................19, 20, 21

*Olson v. Wing*, 281 F. Supp. 2d 476, 486 (E.D.N.Y. 2003) ..........................................10, 18

*Plaza Health Labs, Inc. v. Perales*, 878 F. 2d 577, 580 (2d Cir. 1989)...............................9

*Preterm, Inc. v. Dukakis*, 591 F. 2d 121 (1st Cir. 1979)....................................................14

*Rabin v. Wilson-Coker*, 364 F. 3d 190, 192 (2d Cir. 2004) ...............................................2

*Radeszewski v. Maram*, 383 F. 3d 599, 607 (7th Cir. 2004)........................................21, 22

*Reynolds* 35 F. Supp. 2d 331 (S.D.N.Y. 1999)..................................................................10

*Sai Kwan Wong v. Doar*, 571 F. 3d 247, 251 (2d Cir. 2009) ..........................................2, 14

*Schweiker v. Gray Panthers*, 453 U.S. 34, 37 (1981)......................................................2, 14

*Schweiker v. Hogan*, 457 U.S. 569, 573 n. 6 (1982)...........................................................17

*Slekis v. Thomas*, 523 U.S. 1098 (1999)...........................................................................15

*Sobky v. Smoley*, 855 F. Supp. 1123, 1140 (E.D. Cal 1994)...............................................17

*Townsend v. Quasim*, 328 F. 3d 511 (9th Cir. 2003) ........................................................21

*V.L. v. Wanger*, 669 F. Supp. 2d 1106 (N.D. Cal. 2009) ..................................................10

*Wisconsin Dept. of Health and Family Serv. V. Blumer*, 534 U.S. 473 (2002).................13

**Federal Statutes**

29 U.S.C. § 705(20) .................................................................................................20

29 U.S.C. § 794(a) ..................................................................................................20

42 U.S.C. § 1396a(a)(3).............................................................................................18

42 U.S.C. § 1396a(a)(10)(A) .............................................................................2, 3, 12

42 U.S.C. § 1396a(a)(10)(B).......................................................................................17

42 U.S.C. § 1396a(a)(10)(D) ................................................................................12, 13

42 U.S.C. § 1396a(a)(17).......................................................................................13, 16

42 U.S.C. § 1396d(a) ...............................................................................................12

42 U.S.C. § 12101(a) ................................................................................................20

42 U.S.C. § 12101(a)(8)............................................................................................19

42 U.S.C. § 12132(2) ...............................................................................................20

**State Statute**

New York Soc. Serv. Law § 365-a(2)..........................................................1, 3, 13, 24

**Federal Regulations**

28 C.F.R. § 35.104 ..................................................................................................20

28 C.F.R. § 35.130(b) ..............................................................................................22

28 C.F.R. § 35.130(d) ..............................................................................................20

28 C.F.R. § 41.32 ....................................................................................................20

28 C.F.R. § 41.51(b)(3).............................................................................................22

42. C.F.R. § 431.206(c)..............................................................................................18

42 C.F.R. § 431.210(d)(2)..................................................................................................18

42 C.F.R. § 431.220(a)......................................................................................................18

42 C.F.R. § 431.220(b) .....................................................................................................18

42 C.F.R. § 440.230(d) .....................................................................................................23

42 C.F.R. § 440.70............................................................................................................12

42 C.F.R. § 440.70(a).........................................................................................................12

42 C.F.R. § 440.70(b) ..................................................................................................12, 13

42 C.F.R. § 440.210(a)(1)..................................................................................................12

42 C.F.R. § 440.230(c).......................................................................................................14

42 C.F.R. § 440.240(b) ......................................................................................................16

42 C.F.R. § 441.15(b)(1).....................................................................................................12

45 C.F.R.§ 84.4(b) .............................................................................................................22

**State Regulation**

18 N.Y.C.R.R. § 505.5(g) ...........................................................................................1, 3, 4, 13

**Miscellaneous**

CMS, *Dear State Medicaid Director* (Sept. 4, 1998) .......................................................15

H.R. Rep. No. 101-485, pt. 3, at 49 (1990)........................................................................19

H.R. Rep. No. 213, 89th Cong., 1st Sess; S. Rep. No. 404, 89th Cong., 1st Sess., Pt .......................3

*Provider Update for Pharmacy and DME Providers* of April 5, 2011 ............................................4

## PRELIMINARY STATEMENT

Plaintiffs, Harry Davis, Rita-Marie Geary, Patty Poole, and Roberta Wallach are low-income New York residents who receive their health services through the New York State Medicaid program. Plaintiffs suffer from a range of disabling conditions including multiple sclerosis, lymphedema, peripheral neuropathy, and transmetatarsal amputation. Plaintiffs' physicians have identified either orthopedic footwear or compression stockings as medically necessary to control or remedy serious medical conditions and to prevent the potentially catastrophic or fatal consequences that will follow without these essential treatments. Defendant, however, has prevented Plaintiffs from obtaining these medically necessary treatments. As of April 1, 2011, Defendant ceased covering medically necessary orthopedic footwear and compression stockings for all Medicaid beneficiaries who do not happen to have one of the few medical conditions that would qualify them for an exception.

Early in 2011, the New York State Legislature enacted New York Soc. Serv. Law § 365-a(2)(g)(iii) and (iv), electing to cover compression stockings and orthopedic footwear only for Medicaid recipients with one of a few specified conditions. Defendant then promulgated a regulation, 18 N.Y.C.R.R. § 505.5(g)(1) and (2), to implement these new restrictions. The regulation expressly prohibits any exceptions to the new limitations, no matter how severe the underlying condition or how dire the consequences of foregoing treatment. Defendant has also issued policy guidance in the form of *Medicaid Updates* and *Provider Updates for Pharmacy and DME Providers* to inform doctors and suppliers of the new restrictions. At no point did Defendant notify the recipients themselves of its decision to limit coverage. Plaintiffs, most of whom have had these items covered by Medicaid for years, learned of Defendant's decision only when they went to a supplier, prescription in hand, to obtain the medically necessary items.

1

Plaintiffs were turned away empty-handed, unaware of how and why the coverage had changed, unaware of available exceptions, and unaware of their right to request a fair hearing to contest Defendant's denial.

Plaintiffs seek declaratory and injunctive relief to enjoin Defendant from denying Medicaid coverage of their medically necessary orthopedic footwear and compression stockings and thereby violating federal Medicaid and disability discrimination mandates. Plaintiffs seek a fair process by which they can establish the medical necessity of orthopedic footwear and compression stockings, as required by Federal law.

## STATEMENT OF FACTS

### I.    BACKGROUND ON THE MEDICAID PROGRAM

Congress created the Medicaid program in 1965 by adding title XIX to the Social Security Act, 42 U.S.C. §§ 1396-1396w-5 (hereinafter "the Act"). The purpose of Medicaid is to enable each state, as far as practicable, to furnish "rehabilitation and other services to help … [low-income] … families and individuals attain or retain capability for independence or self-care." 42 U.S.C. §1396-1. State participation in Medicaid is optional. However, once a state chooses to participate in the Medicaid program, and thereby receive federal matching funds for program expenditures, it "must comply with requirements imposed both by the Act itself and by the Secretary of Health and Human Services." *Schweiker v. Gray Panthers*, 453 U.S. 34, 37 (1981); *see also Rabin v. Wilson-Coker*, 364 F. 3d 190, 192 (2d Cir. 2004); *Sai Kwan Wong v. Doar*, 571 F. 3d 247, 251 (2d Cir. 2009).

Medicaid is not available to everyone who is poor. It only covers certain groups of needy individuals, with almost all of those groups listed or referenced in 42 U.S.C. § 1396a(a)(10)(A). States have the option of covering certain categories of individuals, referred to as the "categorically needy," which consist of individuals who are aged, blind, or disabled, working disabled individuals, and children and pregnant women who meet eligibility requirements for

2

specified cash assistance programs or fall below federal poverty level standards. 42 U.S.C. § 1396a(a)(10)(A)(i). The categorically needy, as Congress stated, "are the most needy in the country and it is appropriate for medical care costs to be met, first, for these people." H.R. Rep. No. 213, 89th Cong., 1st Sess; S. Rep. No. 404, 89th Cong., 1st Sess., Pt. 1, reprinted in 1965 U.S.C.C.A.N 2020-21.

## II. NEW YORK'S POLICY ON ORTHOPEDIC FOOTWEAR AND COMPRESSION STOCKINGS

During the 2011 Legislative Session, Governor Andrew Cuomo established the Medicaid Redesign Team (hereinafter "MRT") to develop recommendations for cutting costs in the state Medicaid program. The MRT proposed sweeping changes to the Medicaid program through nearly 200 specific recommendations. The New York State Legislature enacted virtually all the changes proposed by the MRT, authorizing an estimated $2.2 billion in cuts.

The New York State Medicaid statute requires coverage of prescribed, medically necessary durable medical equipment. N.Y. Soc. Serv. L. § 365-a(2). However, as a result of the MRT recommendations, Section 365-a(2)(g) of the New York Social Services Law now covers orthopedic footwear and compression stockings only when the Medicaid beneficiary has a particular medical condition: "(iii) prescription footwear and inserts are limited to coverage only when used as an integral part of a lower limb orthotic appliance, as part of a diabetic treatment plan, or to address growth and development problems in children; and (iv) compression and support stockings are limited to coverage only for pregnancy or treatment of venous stasis ulcers [. . .]." N.Y. Soc. Serv. Law § 365-1(2)(g)(iii) and (iv).

Defendant has promulgated amendments to 18 N.Y.C.R.R. § 505.5 eliminating coverage of orthopedic footwear and compression stockings for most, but not all, categorically needy Medicaid recipients. The regulation now limits compression stockings to coverage only during pregnancy and for venous stasis ulcers. 18 N.Y.C.R.R. § 505.5(g)(1). Similarly, the regulation

3

also limits coverage of orthopedic footwear to "treatment of children to correct, accommodate or prevent a physical deformity or range of motion malfunction in a diseased or injured part of the ankle or foot; as a component of a comprehensive diabetic treatment plan to treat amputation, ulceration, pre-ulcerative calluses, peripheral neuropathy with evidence of callus formation, a foot deformity or poor circulation; or to form an integral part of an orthotic brace." 18 N.Y.C.R.R. § 505.5 (g)(2). The regulation explicitly mandates that: "The department shall not allow exceptions to defined benefit limitations." 18 N.Y.C.R.R. § 505.5(g).

Defendant has communicated these statutory and regulatory changes directly to suppliers through a series of *Provider Updates for Pharmacy and DME Providers*.[1] Defendant made no attempt to communicate its decision to any Medicaid beneficiaries, many of whom–like Plaintiffs here–have had these medically necessary items covered by Medicaid for years.

## III.   PLAINTIFFS' NEED FOR ORTHOPEDIC FOOTWEAR AND COMPRESSION STOCKINGS

Plaintiffs are all disabled and qualify for Medicaid because they also meet Medicaid's income eligibility criteria. Davis Decl. ¶¶ 3, 8; Geary Decl. ¶¶ 2, 4; Poole Decl. ¶ 4; Wallach Decl. ¶ 6. Plaintiffs are therefore categorically needy under the Act.

---

[1] The New York State Department of Health *Provider Update for Pharmacy and DME Providers* of April 5, 2011, describes the new limits on orthopedic footwear, at: https://www.emedny.org/providermanuals/communications/Prescription%20_Footwear_Benefit %20_Update_20110405.pdf. The New York State Department of Health *Provider Update for Pharmacy and DME Providers* of May 25, 2011, describes the new limits on compression stockings, advising them that coverage for compression stockings is available "**only** when used in the treatment of open venous stasis ulcers" and "**only** for treatment of severe varicosities and edema **during pregnancy**"; the stockings are not covered "**for any other conditions, including** the prevention of ulcers, prevention of the recurrence of ulcers, treatment of lymphedema without ulcers, varicose veins, or circulation disorders." See: https://www.emedny.org/providermanuals/communications/Compression_Stockings_Notice_rev ised_20110520.pdf. (Emphasis in the original.) Defndant also communicated the new limits on the coverage of compression stockings and prescription footwear to providers in *The New York State Medicaid Update*, vol. 27, no. 6 (May 2011), at http://www.health.ny.gov/health_care/medicaid/program/update/2011/may2011mu.pdf.

**A. Orthopedic Footwear is Medically Necessary for Plaintiff Harry Davis.**

Plaintiff Harry Davis had transmetatarsal amputations of both feet close to the heel as the result of a meningitis infection in 2001. Dr. Swanger Decl. ¶ 3; Davis Decl. ¶¶ 4, 5. He became eligible for Medicaid while he was in the hospital recovering from the meningitis and consequent amputations. Davis Decl. ¶¶ 8, 9. Medicaid paid for his operation and his rehabilitation. Davis Decl. ¶ 10. Because his feet were amputated, Mr. Davis requires molded shoes in order to walk. Dr. Swanger Decl. ¶¶ 4, 5; Davis Decl. ¶¶ 14, 21. Medicaid has covered one pair of these medically necessary shoes each year ever since he was discharged from the hospital in 2002. Dr. Swanger Decl. ¶ 7; Davis Decl. ¶¶ 12, 20. The shoes enable Mr. Davis to walk and to ride his bicycle, his primary means of transportation. Davis Decl. ¶ 21. The shoes also allow Mr. Davis to care for himself in his apartment and to engage with his community. *Id.*

Medicaid last covered Mr. Davis's shoes in December 2010. In September 2011, Mr. Davis went to Dr. John Jacobs, who has supplied Mr. Davis's shoes ever since 2002, and learned from Dr. Jacobs that Medicaid would no longer pay for them. Davis Decl. ¶ 26. Defendant gave Mr. Davis no notice of its change in policy. Mr. Davis was not informed that there were exceptions to the policy, and he was not informed that he had a right to request a fair hearing, if he disagreed with Defendant's decision. Davis Decl. ¶ 27.

Mr. Davis is not able to afford the shoes on his own. He has been forced to make do with a pair of shoes that is now well over a year old. He has worn through the inner padding that protects the sumps of his feet and is beginning to wear through the hard rubber sole from the inside. The deterioration of his shoes has left him in such unbearable pain that he is no longer able to actively engage in the community and is forced to remain at home most of the time. Davis Dec. ¶¶ 29, 30.

If the shoes are not replaced, Mr. Davis will no longer be able to walk, and will be required to use a wheelchair instead, for which Medicaid will have to pay. Dr. Swanger Decl. ¶¶

5

12, 13. As a result, he will likely be forced to leave his home, because it is not wheelchair accessible. Davis Decl. ¶ 31. He will likely require additional aide services to assist him at home. Dr. Swanger Decl. ¶ 13. He also risks serious medical consequences, including increased callous formation, infection, and further loss of limb. Dr. Swanger Decl. ¶¶ 12, 13. As a result, Mr. Davis is at serious risk of institutionalization. Dr. Swanger Decl. ¶ 13.

### B. Orthopedic Footwear is Medically Necessary for Plaintiff Rita-Marie Geary.

Plaintiff Rita-Marie Geary suffers from a number of disabling ailments, including ankylosing spondylitis, psoriatic arthritis, osteoarthritis, scoliosis, osteoporosis, patellofemoral stress syndrome, and peripheral neuropathy. Dr. High Decl. ¶ 3; Geary Decl. ¶ 4. Ms. Geary has needed prescription footwear to manage her foot-related conditions since the 1990s. Geary Decl. ¶ 6. Medicaid has covered one pair of prescription shoes for her every year ever since she first needed them. While it is the peripheral neuropathy in particular that makes her orthopedic footwear medically necessary, the combination of her multiple impairments places her at increased risk of serious injury from falls resulting from improper footwear. Dr. High Decl. ¶ 6; Geary Decl. ¶ 16.

Her podiatrist, Dr. David E. High, D.P.M., wrote a prescription for a new pair of shoes for Ms. Geary on December 27, 2011. Geary Decl. ¶ 9. On January 3, 2012, when she attempted to fill the prescription at Foot Performance Center in Rochester, New York, she was told that Medicaid no longer covered her shoes. Geary Decl. ¶ 11. She had no prior notice of this new limitation. She was not told that there were exceptions to Defendant's new policy for which she might qualify; nor was she informed that she had a right to request a fair hearing, if she disagreed with Defendant's denial. Geary Decl. ¶ 15. Upon her request, the supplier did provide her with a print-out of the computer screen indicating that Defendant had determined she was not eligible for coverage of her medically necessary footwear. Geary Decl. ¶ 14. Ms. Geary is unable to afford the cost of her shoes. Geary Decl. ¶ 13.

6

Unless the shoes are replaced, Ms. Geary is at risk of additional falls, which, because of her many health issues, will likely cause significant injury. Dr. High Decl. ¶ 6; Geary Decl. ¶ 16.

### C. Compression Stockings are Medically Necessary for Plaintiff Patty Poole.

Plaintiff Patty Poole suffers from lymphedema. Dr. Pejo Decl. ¶ 5; Poole Decl. ¶ 3. Lymphedema causes excess swelling in Ms. Poole's legs, ankles, and feet. Dr. Pejo Decl. ¶5; Poole Decl. ¶ 5. Because of the lymphedema, Ms. Poole is prone to develop skin infections or cellulitis. Early in 2011, Ms. Poole developed a cellulitic infection on the back of her right leg that rapidly grew to a mass about a foot in diameter. Dr. Pejo Decl. ¶¶ 4, 6; Poole Decl. ¶ 6. In order to remove the mass, Ms. Poole spent nearly a month in the hospital—first for two-weeks of IV antibiotic treatments to eliminate the infection, followed by an operation to remove the mass on April 4, 2011, and then two weeks of recovery before being discharged on April 18, 2011. Dr. Pejo Decl. ¶¶ 8-11. Her surgeon, Dr. Samuel Pejo, M.D., then prescribed compression stockings to control the swelling in her legs. Dr. Pejo Decl. ¶ 17; Poole Decl. ¶ 10. Defendant's new policy had recently gone into effect, and Ms. Poole was unable to get the prescription for compression stockings filled. Ms. Poole requires custom-fitted compression stockings that cost about $900. Poole Decl. ¶ 15. She cannot afford to pay for them herself. Poole Decl. ¶ 16.

As the result of a prior authorization request, Ms. Poole received a letter from Defendant informing her that the prescription could not be filled, because the law had changed and compression stockings would no longer be covered. Poole Decl. ¶ 11. The letter said nothing about any exceptions to the policy and also failed to inform her of her right to request a fair hearing should she disagree with Defendant's decision. Ex. A.

Since that time, Ms. Poole has had to make do with alternate treatments that fail to control the swelling in her legs. Dr. Pejo Decl. ¶ 19; Poole Decl. ¶ 12. Her legs have since returned to their pre-operative size. Dr. Pejo Decl. ¶ 19; Poole Decl. ¶ 13. The complications attributable to these alternate treatments and their failure to effectively treat her condition have

7

rendered her virtually home-bound. Poole Decl. ¶¶ 14, 21. Without compression stockings, Ms. Poole faces what her surgeon calls a "major medical disaster" due to the catastrophic effects of further infection, massive edema, and ulceration of the skin. Dr. Pejo Decl. ¶ 21.

### D. Compression Stockings are Medically Necessary for Plaintiff Roberta Wallach.

Plaintiff Roberta Wallach suffers from Multiple Sclerosis. Dr. Dowlatshahi Decl. ¶ 5; Wallach Decl. ¶ 2. She was first diagnosed with the disease over 30 years ago. Since that time, the disease has gradually progressed, limiting her ability to function. Both of her legs are now paralyzed, as is her left arm, leaving her with no function in anything but her right arm and mouth. Dr. Dowlatshahi Decl. ¶ 6; Wallach Decl. ¶ 2. Because her legs are paralyzed, she suffers from edema, which causes excess fluids to collect in her lower extremities. Dr. Dowlatshahi Decl. ¶ 7; Wallach Decl. ¶ 3. Ms. Wallach is therefore prone to develop deep venous thrombophlebitis and pulmonary embolism. These conditions can be fatal. Dr. Dowlatshahi Decl. ¶ 8; Wallach Decl. ¶ 4.

Ms. Wallach has needed compression stockings since 2007, when she first went into a nursing home. Wallach Decl. ¶ 9. She became eligible for Medicaid at the same time, and Medicaid has paid for two pair of compression stockings for her ever since. Wallach Decl. ¶¶ 8, 9. On April 1, 2011—the same day that Defendant's policy went into effect—Ms. Wallach was able to leave the nursing home and move into her own apartment. Wallach Decl. ¶ 10. Ms. Wallach made do with her last pair of compression stockings through the end of the year, when they could no longer effectively control her condition. Wallach Decl. ¶ 11. She ordered a new pair of compression stockings in January 2012, and was told that Medicaid would no longer cover them. Wallach Decl. ¶ 13. Defendant had not informed Ms. Wallach of its decision no longer to cover her compression stockings. Defendant also did not notify her of any available exceptions in its policy, and did not inform her of her right to request a fair hearing, should she disagree with Defendant's decision in her case.

8

Ms. Wallach was ultimately forced to pay for her compression stockings out-of-pocket. Wallach Decl. ¶ 15.  The increased risk of hospitalization and death is simply too great to risk doing without these essential treatments.  Dr. Dowlatshahi Decl. ¶ 12; Wallach Decl. ¶ 15.

## ARGUMENT

### I.   STANDARD FOR PRELIMINARY RELIEF

The Second Circuit has recognized two separate standards for granting preliminary injunction: "In general, the district court may grant a preliminary injunction if the moving party establishes (1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." *Lynch v. City of New York*, 589 F. 3d 94, 98 (2d Cir. 2009) (*citing Plaza Health Labs, Inc. v. Perales*, 878 F. 2d 577, 580 (2d Cir. 1989).  The Court has further held that:

> [W]here the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the district court should not apply the less rigorous fair-ground-for-litigation standard and should not grant the injunction unless the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim.

*Lynch*, 589 F. 3d at 98.  *See also Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Limited*, 598 F. 3d 30 (2d Cir. 2010) (reffirming the Second Circuit's preliminary injunction standard after *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008)).

Because Plaintiffs here seek to stay an action by the State of New York under the Medicaid program, Plaintiffs must demonstrate:  (1) irreparable harm, (2) a likelihood of success on the merits, and (3) a balance of hardships tipping in favor of Plaintiffs.

### II.   DEFENDANT'S FAILURE TO COVER MEDICALLY NECESSARY ORTHOPEDIC FOOTWEAR AND COMPRESSION STOCKINGS CAUSES PLAINTIFFS IRREPARABLE HARM

It is well settled that a loss of Medicaid benefits constitutes irreparable harm in and of itself. *See, e.g., Henrietta D. v. Bloomberg*, 331 F. 3d 261, 290 (2d Cir. 2003) (failure to provide

9

access to Medicaid and other public assistance programs constitutes irreparable harm and supports injunctive relief); *Caldwell v. Blum*, 621 F. 2d 491, 498 (2d Cir. 1980) (finding irreparable harm for denial of essential health benefits due to loss of Medicaid coverage); *Olson v. Wing*, 281 F. Supp. 2d 476, 486 (E.D.N.Y. 2003) ("to indigent persons, the loss of even a portion of subsistence benefits constitutes irreparable injury") (quoting *Reynolds*, 35 F. Supp. 2d 331, 339 (S.D.N.Y. 1999), and *Morel v. Giuliani*, 9278 F. Supp. 622, 635 (S.D.N.Y. 1995)). *See also, e.g., Brantley v. Maxwell-Jolly*, 656 F. Supp. 2d 1161, 1176-77 (N.D. Cal. 2009) (finding irreparable harm where disabled plaintiffs were losing Medicaid services "critical to ensuring that their tenuous physical and mental conditions remain stable, enabling them to remain in the community"); *V.L. v. Wagner*, 669 F. Supp. 2d 1106, 1121-22 (N.D. Cal. 2009) (finding irreparable harm where lack of Medicaid-covered services could destabilize families and cause recipients to be unable to leave their homes); *Edmonds v. Levine*, 417 F. Supp. 2d 1323, 1342 (S.D. Fla. 2006) (summarizing eight Medicaid cases finding irreparable harm or imminent risk of irreparable harm due to a variety of Medicaid cuts); *McMillan v. McCrimon*, 807 F. Supp. 475, 482 (C.D. Ill. 1992) ("possibility" that plaintiffs would have to enter nursing home due to loss of Medicaid services "constitutes irreparable harm").

Without the prescribed orthopedic footwear and compression stockings, Plaintiffs face increased risk of a host of severe and potentially fatal harms, including, but not limited to: infection, cellulitis, skin ruptures, ulceration, injury from falls, deep venous thrombophlebitis, pulmonary embolism, hospitalization, institutionalization, and isolation from the community.

Plaintiff Harry Davis had bilateral metatarsal amputations of his feet a decade ago and is completely unable to walk without the aid of shoes molded to fit the stubs that remain of his feet. His current shoes are now so deteriorated that he has completely worn through the inner foam padding and is now wearing through the hard rubber sole from the inside. The increased pain resulting from the shoes' deterioration already prevents Mr. Davis from leaving his home.

10

Without the shoes, "[h]e will likely require a wheelchair and additional aide services. He will risk further infection and further loss of limb. He will also face possible institutionalization." Dr. Swanger Dec. ¶ 13.

Plaintiff Rita-Marie Geary suffers from numerous, disabling conditions, including peripheral neuropathy. "The combination of impairments she suffers increases the risk of harm should she not be able to obtain the shoes. Her various forms of arthritis place her at increased risk of falling, and the loss in bone density caused by her osteoporosis places her at risk of broken bones and other traumatic injuries from even the smallest of falls." Dr. High Dec. ¶ 5.

Plaintiff Patty Poole suffers from lymphedema and needs compression stockings to control the swelling in her lower extremities. She has already endured a month-long hospitalization and an operation to treat a cellulitic infection and remove a large mass. Without properly fitted compression stockings, Ms. Poole has had to rely on alternative treatments that have failed adequately to control the swelling. The failure of these treatments and the lack of compression stockings have rendered her virtually homebound, and the swelling has returned to its pre-operative state placing her at significant risk of recurrent infection. "Failure to treat her lymphedema with compression stockings will result in what can only be characterized as a medical disaster—recurrent infection, massive edema forming tumor-like masses, and ulceration of the skin." Dr. Pejo Decl. ¶ 21.

Plaintiff Roberta Wallach has multiple sclerosis and is paralyzed in both legs. She needs compression stockings to control the edema in her legs and prevent potentially fatal deep venous thrombophlebitis and pulmonary embolism. Medicaid covered her compression stockings until April 2011. Coverage of such medically necessary treatments as compression stockings enable Ms. Wallach to remain in the community rather than returning to the confines of a nursing home. Because she faces potentially fatal consequences without these medically necessary items, Ms. Wallach is forced to pay out of pocket for them. "Left uncontrolled, the edema in her lower

11

extremeties would also increase the risk of infection and ulceration of the skin. Any of these complications would have life-altering consequences for a person in Ms. Wallach's condition. Should they develop, they could lead to unnecessary hospitalizations and eventual institutionalization." Dr. Dowlatshahi Dec. ¶ 12.

Thus, Plaintiffs have clearly established irreparable harm sufficient to obtain a preliminary injunction. All four already suffer palpable harm as a result of Defendant's refusal to cover medically necessary orthopedic footwear and compression stockings, and all four require these treatments in order to prevent catastrophic or fatal consequences.

## III.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS

### A. Coverage of Medically Necessary Orthopedic Footwear and Compression Stockings Only for Medicaid Recipients Who Meet a Predetermined Exception Violates the Home Health Services Requirement of the Medicaid Act.

Federal laws and regulations require States participating in the Medicaid program to provide home health services to "any individual who, under the State plan, is entitled to nursing facility services...." 42 U.S.C. § 1396a(a)(10)(D). All categorically needy individuals are entitled to nursing facility services. 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a); 42 C.F.R. §§ 440.70, 440.210(a)(1), and 441.15(b)(1). Thus, states must provide home health services to all categorically needy individuals.

Under federal Medicaid law, home health services are provided to the Medicaid recipient at his or her place of residence, and include "medical supplies, equipment, and appliances suitable for use in the home." 42 C.F.R. §§ 440.70(a)(1) and (b)(3); *see also* 42 C.F.R. § 441.15 ("a State Plan must provide that ... the [state Medicaid] agency provides home health services to ... Categorically needy recipients age 21 and over"); 42 C.F.R. § 440.210 ("a State Plan must specify that, at a minimum, categorically needy recipients are furnished ... the services defined in ... 440.70.); 42 C.F.R. §440.210(a)(1).

12

A number of courts have struck down state Medicaid policies that denied or limited access to home health services, including medical equipment and supplies. Noting that "[h]ome health care services are generally a mandatory service for the categorically needy," the court in *Esteban v. Cook* struck down a restriction that denied coverage of wheelchairs—a home health service—in violation of the Medicaid Act. 77 F. Supp. 2d 1256, 1259 (S.D. Fla. 1999). *See also Ladd v. Thomas*, 962 F. Supp. 284, 288 (D. Conn. 1997) (citing 42 C.F.R. § 440.70(b)(3) and finding that "Federal law mandates that participating states provide home health services, including durable medical equipment, to Medicaid recipients where such equipment is medically necessary"); *Hodges v. Smith*, 910 F. Supp. 646, 649 (N.D. Ga. 1995) (Georgia could not rely on its state plan to deny home health services because "inclusion of home health services in the state medical plan is mandated by federal law").

In the instant case, New York excludes coverage of medically necessary orthopedic footwear and compression stockings for all those who do not also suffer one of the statutorily prescribed conditions that would avail them of an exception. Because these items are mandatory home health services to which all categorically needy Medicaid recipients are entitled, Defendant's written policies, regulation 18 N.Y.C.R.R. § 505.5(g)(1) and (2), and New York Soc. Serv. L. § 365-1(2)(g)(iii) and (iv) violate 42 U.S.C. § 1396a(a)(10)(D), which requires coverage of home health services for all categorically needy individuals.

## B. Denial of Medically Necessary Orthopedic Footwear and Compression Stockings Without an Individualized Exceptions Process Violates the "Reasonable Standards" Requirement of the Medicaid Act.

States have some discretion in determining the scope of Medicaid coverage. *See* 42 C.F.R. § 430.0; *Beal v. Doe,* 432 U.S. 438, 444 (1977). However, the Medicaid Act limits that discretion by requiring states to employ "reasonable standards ... for determining ... the extent of medical assistance under the plan which ... are consistent with the objectives of this subchapter." 42 U.S.C. § 1396a(a)(17). *See Wisconsin Dept. of Health and Family Serv. v.*

13

*Blumer*, 534 U.S. 473, 479 (2002); *Schweiker v. Gray Panthers*, 453 U.S. 34, 36-37 (1981); *Herweg v. Ray*, 455 U.S. 265 (1982); *Sai Kwan Wong v. Doar*, 571 F. 3d 247, 251 (2d Cir. 2009). *See also Lankford v. Sherman*, 451 F. 3d 496, 506 (8th Cir. 2006) (while "a state has considerable discretion to fashion medical assistance under its Medicaid plan, this discretion is constrained by the reasonable-standards requirement"). Medicaid regulations further limit state discretion by requiring that "appropriate limits" be "based on such criteria as medical necessity or on utilization control procedures." 42 C.F.R. § 440.230(d). States "may not arbitrarily deny the amount, duration, and scope of a required service ... solely because of the diagnosis, type of illness, or condition." 42 C.F.R. § 440.230(c). Thus, limits on mandatory services based solely on diagnosis or condition, and not on medical necessity, are "arbitrary" and unreasonable. *See Lankford*, 451 F. 3d at 511) (citing cases) ("a state's failure to provide Medicaid coverage for non-experimental, medically-necessary services within a covered Medicaid category is both per se unreasonable and inconsistent with the stated goals of Medicaid").

Courts, therefore, have long invalidated state Medicaid policies that arbitrarily restrict access to medical equipment, services, and supplies based on criteria other than medical necessity as violations of the "reasonable standards" requirement. *See Lankford,* 451 F. 3d at 511-12 (invalidating state limitations on durable medical equipment to most categorically needy Medicaid beneficiaries); *Hern v. Beye*, 57 F. 3d 906, 910-11 (10th Cir. 1995) (state agency cannot deny abortion coverage for qualified women who are victims of rape or incest); *Preterm, Inc. v. Dukakis*, 591 F. 2d 121, 126, 131 (1st Cir. 1979) (abortion services only to prevent the death of the mother violate the reasonableness requirement); *Zbaraz v. Quern*, 596 F. 2d 196, 199 (7th Cir. 1979) (concurring with *Preterm*); *Hiltibran v. Levy*, 793 F. Supp. 2d 1108, 1115 (W.D. Mo. 2011) (denial of non-experimental, medically necessary DME violates Medicaid's reasonable standards requirement.

14

Nevertheless, the Second Circuit Court of Appeals once held that it was permissible for the Connecticut Medicaid program to maintain "exclusive lists" of medical equipment, and thereby deny individual recipients coverage of medically necessary DME. *DeSario v. Thomas*, 523 F. 3d 80 (2d Cir. 1998). In response to this decision, the Health Care Financing Administration of the federal Department of Health and Human Services, the agency charged with implementing the Medicaid Act (now the Centers for Medicare and Medicaid Services) (hereinafter "CMS"), issued a *Dear State Medicaid Director* letter explaining the appropriate DME policy for state Medicaid programs.[2] In its letter, CMS summarized each state's federal obligations under the Medicaid reasonableness-standards requirement, and described the minimum standards that all state DME policies are required to maintain:

> An ME [medical equipment] policy that provides no reasonable and meaningful procedure for requesting items that do not appear on a State's pre-approved list, is inconsistent with the federal law [. . .]. [T]he process for seeking modification or exception must be made available to all beneficiaries and may not be limited to sub-classes of the population (e.g., beneficiaries under the age of 21) [. . .]. [A] state will be in compliance with federal Medicaid requirements only if, with respect to an individual applicant's request for an item of ME, the following conditions are met: The process is timely and employs reasonable and specific criteria by which an individual item of ME will be judged for coverage under the State's home health services benefit.

CMS, *Dear State Medicaid Director* (September 4, 1998).

On the basis of this agency guidance, the Supreme Court vacated the *DeSario* decision and remanded the case for further consideration in light of the CMS guidance. *See Slekis v. Thomas*, 523 U.S. 1098 (1999), *vacating and remanding, Desario v. Thomas*, 139 F. 3d 80 (2d Cir. 1998). Since then, courts ruling directly on the issue have struck down categorical denials of coverage for mandatory services without an individualized exceptions process as violations of the reasonable standards and comparability requirements. *See Lankford*, 451 F. 3d at 513

---

[2] *See*, CMS, *Dear State Medicaid Director* (Sept. 4, 1998), at
http://www.cms.gov.bhs.gov/states/letters/smd90498.asp

15

(invalidating state elimination of DME where no meaningful procedure for requesting non-covered DME was provided); *Hiltibran*, 793 F. Supp. 2d at 1115.

In *Lankford*, the Eighth Circuit faulted a Missouri policy that excluded several items of medical equipment and supplies (e.g., respiratory care equipment, parenteral nutrition (feeding tubes), decubitus care equipment, wheel chair batteries, and hospital beds) for certain disabled adults without regard to medical necessity. 451 F. 3d at 501, 511. New York's arbitrary exclusion of coverage for orthopedic footwear and compression stockings is similarly unreasonable. The state's new policy will cover orthopedic shoes for someone with diabetes *and* peripheral neuropathy, but not peripheral neuropathy without diabetes; a patient with swelling in his or her legs so severe that venous stasis ulcers have already developed will get compression stockings, but a patient with lymphedema who has already suffered massive cellulitic infection that required surgical treatment at Defendant's expense will not—even when Defendant's own health policy strongly recommends use of compression stockings to treat the condition.[3] Such distinctions have nothing to do with medical necessity, are improperly based solely on diagnosis or condition, and therefore violate the reasonableness requirement in 42 U.S.C. § 1396a(a)(17).

### C. Defendant's Policy to Cover Medically Necessary Orthopedic Footwear and Compression Stockings Only for those Medicaid Recipients with Certain Conditions and Not Others Violates the Comparability Requirement.

The Medicaid Act requires that "The medical assistance made available to any [categorically needy] individual … shall not be less in amount, duration or scope than the medical assistance made available to any other such individual." 42 U.S.C. § 1396a(a)(10)(B)(i); *see also* 42 C.F.R. § 440.240(b) (requiring that "the services available to any individual in the following groups are equal in amount, duration, and scope for all recipients within that group: (1) The categorically needy.") This requirement is known as the

---

[3] Defendant's New York State Department of Health publication on lymphedema. http://www.health.ny.gov/publications/0399.pdf.

"comparability requirement." Thus, services made available to any categorically needy individual must be made available to all such individuals. *See Schweiker v. Hogan*, 457 U.S. 569, 573 n. 6 (1982) (finding 42 U.S.C. § 1396a(a)(10)(B)(i) to mean that "the amount, duration, and scope of medical assistance provided to an individual who qualified to receive assistance for the aged could not be different from the amount, duration, and scope of benefits provided to an individual who qualified to receive assistance for the blind"). *See also Lankford*, 451 F. 3d at 505 (state policy that provides various items of DME to some categorically needy but not others violates the comparability requirement); *V.L. v. Wagner*, 669 F. Supp. 2d at 1114-15 (comparability requirement is "violated when some recipients are treated differently than others where each has the same level of need"); *Sobky v. Smoley*, 855 F. Supp. 1123, 1140 (E.D. Cal 1994) (holding that 42 U.S.C. § 1396a(a)(10)(B) prohibits discrimination between groups of the categorically needy as well as between individuals within the same group).

Defendant's current policy to cover orthopedic footwear and compression stockings only for individuals who have certain statutorily defined conditions clearly discriminates among sub-classes of categorically needy Medicaid beneficiaries in violation of comparability requirement in federal Medicaid law. Defendant's policy is therefore invalid.

### D. Defendant's Decision to Eliminate Coverage for Medically Necessary DME Without Notice and Without Informing Recipients of their Right to Request a Fair Hearing Violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and the Medicaid Act.

The Fourteenth Amendment to the U.S. Constitution prohibits states from denying, reducing, or terminating Medicaid services without due process of law. The constitutional right includes the right to meaningful notice prior to the termination of Medicaid benefits, continued benefits pending a pre-termination hearing, and a fair and impartial pre-termination hearing. *Goldberg v. Kelly*, 397 U.S. 254 (1970). Federal Medicaid regulations explicitly implement the due process requirements set forth in *Goldberg*. 42 C.F.R. § 431.200-.250. Under these

17

requirements, recipients are entitled to receive timely, adequate, and understandable written notices of their hearing rights when an action affects their claim for health services; the hearing must be fair and impartial and held at a meaningful time; coverage of services must be continued at the prior level until a final *de novo* hearing decision if: (a) a Medicaid recipient requests a fair hearing before the date that the services are to be stopped or reduced; (b) the recipient requests the hearing within 10 days of the mailing of the notice; or (c) the requisite notice is not sent. 42 C.F.R. Part 431. *See Catanzano by Catanzano v. Dowling*, 60 F. 3d 113 (2d Cir. 1995) (notice and hearing required where certified home health agency, as state actor, reduces or terminates a recipient's aide services); *Olson*, 281 F. Supp. 2d at 486 (termination of Disaster Relief Medicaid benefits without pre-termination hearing and aid continuing violates due process requirements); *Mayer v. Wing*, 922 F. Supp. 902, 910 (S.D.N.Y. 1996) (finding Medicaid benefits are a protected property interest under the Fourteenth Amendment).

Federal regulations require written notice when the state terminates, suspends, or reduces Medicaid eligibility or covered services. 42 C.F.R. §§ 431.206(c)(2), 431.210. Such notice must describe the action that the state intends to take, the reasons for the intended action, the specific regulation supporting the action, and the individual's right to request a hearing. 42 C.F.R. § 431.210. Recipients are entitled to request a hearing when they believe that the agency has taken action erroneously. *Id.* § 431.220(a)(2). There is an exception when "the *sole* issue is a federal or state law requiring an automatic change adversely affecting some or all recipients." 42 C.F.R. § 431.220(b) (emphasis added). Even when a state is proposing action based upon a change in state or federal law, individuals are still entitled to notice that describes the specific action that the agency plans to take and the circumstances under which a hearing will be granted. 42 C.F.R. § 431.210(d)(2).

In the instant case, Defendant has covered Plaintiffs' medically necessary orthopedic footwear and compression stockings for years. Defendant did not notify Plaintiffs of its decision

18

to terminate coverage of these items in their cases. Plaintiffs first learned that Defendant's

policy would eliminate their services when they went to their respective suppliers to obtain them,

just as they had in previous years. The suppliers then informed Plaintiffs that they did not meet

any of the available exceptions and therefore would not be able to receive the orthopedic

footwear or compression stockings. Defendant failed to provide written notice informing

Plaintiffs that the equipment they needed was no longer covered, why it was not covered, under

what circumstances it would be covered, or whether a fair hearing was available to contest the

denial.

Accordingly, Defendant's failure to notify Plaintiffs of reductions in mandatory home

health services and available fair hearing rights violate the Fourteenth Amendment as well as the

Medicaid statute and regulations.

### E. Plaintiffs are Likely to Succeed on the Merits of their Claim that Defendant's are Violating the ADA and Section 504 of the Rehabilitation Act.

#### 1. The ADA and Section 504 Prohibit Discrimination Against Individuals with Disabilities.

Congress enacted the Americans with Disabilities Act (hereinafter "ADA") to prohibit

discrimination by all public entities against people with disabilities. 42 U.S. C. §§ 12131-12165;

H.R. Rep. No. 101-485, pt. 3, at 49 (1990), *reprinted in* 1990 U.S.C.C.A.N. 267, 472. The goals

of the ADA "are to assure equality of opportunity, full participation, independent living, and

economic self-sufficiency for each individual [with disabilities]." 42 U.S.C. § 12101(a)(8). The

Supreme Court has held that unjustified isolation is properly regarded as discrimination based on

disability under the ADA. *Olmstead v. L.C.* 527 U.S. 581, 597 (1999).

Title II of the ADA, which governs public programs such as the New York State

Medicaid program, provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

19

42 U.S.C. § 12132; *Disability Advocates v. Patterson*, 598 F. Supp. 2d 289, 316 (E.D.N.Y.2009) (on appeal) (Title II of the ADA applies to "all programs, services, and activities of a state or local government entity *without* any exception") (emphasis in original). Section 504 of the Rehabilitation Act applies the same standards to entities that receive federal financial assistance. 29 U.S.C. § 794(a). *Gorman v. Barnes*, 536 U.S. 181, 184-85 (2002); *Bragdon v. Abbott*, 524 U.S. 624, 631-32 (1998).

Under the ADA, a "qualified individual with a disability" is a person who "with or without reasonable modifications to rules, policies or practices" meets the "essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12132(2). Section 504's definition is substantially similar. *See* 29 U.S.C. § 705(20).[4] All Plaintiffs are eligible for Medicaid and are qualified persons with disabilities within the meaning of the ADA and Section 504.

## 2. The "Integration Mandate" of the ADA and Section 504 Prohibit Unjustified and Unnecessary Institutionalization.

In enacting the ADA, Congress specifically found that segregation of persons with disabilities, especially in institutions, is a form of discrimination. 42 U.S.C. § 12101(a)(2), (3), and (5). The ADA's integration mandate requires public entities to "administer services, programs and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." *Olmstead*, 527 U.S. at 592; 28 C.F.R. § 35.130(d). The ADA's integration mandate requires states to ensure that services are administered to people with disabilities in the most integrated setting appropriate to their needs, and provides a defense to

---

[4] ADA regulations define disabilities, with respect to an individual, to include "a physical or mental impairment that substantially limits one or more of the major life activities of such individual ... such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 28 C.F.R. § 35.104. The Section 504 requirements are essentially the same. 28 C.F.R. § 41.32.

20

states only where they can show that it would be a fundamental alteration of their service systems to do so. *Olmstead*, 527 U.S. at 591-92, 603; *Townsend v. Quasim*, 328 F. 3d 511, 516-17 (9th Cir. 2003); *Radeszewski v. Maram*, 383 F. 3d 599, 607 (7th Cir. 2004); *Fisher v. Okla. Health Care Auth.*, 335 F. 3d 1175, 1183 (10th Cir. 2003); *Disability Advocates, Inc., v. Patterson*, 653 F. Supp. 2d 184, 191 (E.D.N.Y. 2009). The integration mandates of the ADA and Section 504 are virtually identical and are applied in the same manner. *See Radaszewski*, 383 F. 3d at 607; *Fisher*, 335 F. 3d at 1179 n. 3 (10th Cir. 2003); *Disability Advocates, Inc.*, 653 F. Supp. 2d at 190-91.

In analyzing the ADA's integration mandate, the *Olmstead* Court held that "unjustified isolation" is "properly regarded as discrimination based on disability." *Id.* at 597. The Court interpreted the ADA's "integration mandate" to require persons with disabilities to be served in the community rather than in institutions when community placement is appropriate, the community setting is not opposed by the affected individual, and the State cannot demonstrate a fundamental alteration of its programs and services. *Id.* at 587, 591-92, 602-03.

Plaintiffs do not need to wait until they are institutionalized to bring a claim under the integration mandate. Plaintiffs who currently reside in community settings may assert ADA integration claims to challenge state actions that give rise to a risk of unnecessary institutionalization. *See Fisher*, 335 F. 3d at 1181-82; *Brantwell v. Maxwell-Jolly*, 656 F. Supp. 2d 1161 (N.D. Cal. 2009). In this case, Plaintiffs' providers have identified unnecessary institutionalization as one of the consequent risks of foregoing medically necessary orthopedic footwear and compression stockings. Plaintiff Wallach has already resided in a nursing home, and could very well be forced to return there without the services necessary to maintain her health in the community. And Defendant's failure to cover these medically necessary items has already rendered Plaintiffs Davis and Poole virtually home-bound, isolating them from the community in violation of *Olmstead*, the ADA, and Section 504.

Finally, covering medically necessary orthopedic footwear and compression stockings will not require any fundamental alteration of Defendant's services where Defendant has already covered these medically necessary items for Plaintiffs for years and where Defendant continues to provide these items for all those who happen to meet the statutorily prescribed exceptions. Furthermore, the cost of providing these services pales in comparison to the potential costs of doing without, including unnecessary hospitalizations, increased aide services, and forced institutionalization.

### 3. Defendant is likely Violating the ADA and Section 504 Methods of Administration Requirements.

The ADA prohibits methods of administration that have a discriminatory effect:

> Directly or through contractual or other arrangements utilize … methods of administration (i) [t]hat have the effect of subjecting qualified individuals with a disability to discrimination on the basis of disability; [and] (ii) [t]hat have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disability.

28 C.F.R. § 35.130(b)(3).[5]

Defendant's policies on orthopedic footwear and compression stockings discriminate against Plaintiffs by arbitrarily refusing to make an exception or prior authorization process available to them under *any* circumstances.

Moreover, Defendant's methods of administration defeat the purpose of the Medicaid program, which is to enable each state, "to furnish (1) medical assistance to disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) … to help such families and individuals attain or retain capability for independence or self-care." 42 U.S.C. § 1396-1. Defendant's orthopedic footwear and compression stockings policies contradict these purposes by requiring individuals with disabilities to use their own "insufficient"

---

[5] Section 504 contains similar requirements that prohibit methods of administration that result in disability-based discrimination. *See* 28 C.F.R. § 41.51(b)(3)(i); 45 C.F.R.§ 84.4(b)(4).

22

resources to "meet the costs of necessary medical services." *See Brantley v. Maxwell-Jolly,* 656

F. Supp. 2d at 1175 (finding plaintiffs likely to succeed on their claims that the state violated the

methods of administration requirement by, *inter alia*, failing to provide advance notice of cuts to

services). Defendant's policies thus violate the methods of administration requirements of the

ADA and Section 504.

## IV.   THE THREAT OF SERIOUS, HEALTH-RELATED INJURY TO THE PLAINTIFFS CLEARLY OUTWEIGHS ANY POTENTIAL HARM TO DEFENDANT

The balance of hardships weighs decidedly in favor of Plaintiffs and Plaintiff class.

Plaintiffs will continue to suffer from the loss of medically necessary orthopedic footwear and

compression stockings that are critical to their health, safety, and community living. Any fiscal

harm that Defendant might suffer is outweighed by the harm to Plaintiffs' lives and health.

Plaintiffs seek only that Defendant complies with controlling federal law. As stated by the

Seventh Circuit:

> Because the defendants are required to comply with the [Food Stamp] Act, we do not see how enforcing compliance imposes any burden on them. The Act itself imposes the burden; this injunction merely seeks to prevent the defendants from shirking their responsibilities under it.

*Haskins v. Stanton,* 794 F.2d 1273, 1277 (7th Cir. 1986) (granting preliminary injunction

requiring defendant's compliance with federal timeliness standards for processing food stamp

applications). *See also Henrietta D. v. Giuliani,* 119 F. Supp. 2d 181, 210 (E.D.N.Y. 2000); *Ill.*

*Hosp. Ass'n v. Ill. Dep't of Public Aid,* 576 F. Supp. 360, 371 (N.D. Ill. 1983) ("Once a state has

voluntarily elected to participate in the Medicaid program,…[it cannot] characterize its duty to

comply with the requirements of [the program] as constituting a hardship to its citizens.").

Any alleged hardship to Defendants is also negated by the fact that they can still establish

*reasonable* utilization controls on the requested items of DME. *See* 42 C.F.R. § 440.230(d).

Plaintiffs do not seek coverage of these supplies in *all* circumstances. Rather, they seek a fair

23

process by which they can establish the medical necessity of orthopedic footwear and

compression stockings.

## CONCLUSION

This Court should preliminarily enjoin Defendant from enforcing its illegal policies,

regulation and New York Soc. Serv. L. § 365-a(2)(iii) and (iv), and from arbitrarily denying

medically necessary orthopedic footwear and compression stockings through any other means.

Dated: Rochester, New York
      March 14, 2012

Respectfully Submitted,

EMPIRE JUSTICE CENTER, INC.
1 West Main Street, Suite 200
Rochester, New York 14614
Telephone: (585) 454-4060

NATIONAL HEALTH LAW PROGRAM, INC.
101 East Weaver Street, Suite G-7
Carrboro, North Carolina 27510
Telephone:  (919) 968-6308

/s/ Bryan Hetherington
Bryan Hetherington, Esq.
bhetherington@empirejustice.org

/s/ Sarah Somers
Sarah Somers, Esq.
*Pro Hac Vice* Application Pending
ssomers@healthlaw.org

/s/ Jonathan Feldman
Jonathan Feldman, Esq.
jfeldman@empirejustice.org

/s/ Jane Perkins
Jane Perkins, Esq.
*Pro Hac Vice* Application Pending
perkins@healthlaw.org

/s/ Geoffrey Hale
Geoffrey Hale, Esq.
ghale@empirejustice.org

*Counsel for Plaintiffs*

24