UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HARRY DAVIS; RITA-MARIE GEARY; PATTY POOLE; and ROBERTA WALLACH, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>NIRAV SHAH, individually and in his official capacity as Commissioner of the New York State Department of Health,<br><br>Defendant | **ATTORNEY DECLARATION IN SUPPORT OF PRELIMINARY INJUNCTION**<br><br><br>**12' CV 6134** |

Geoffrey Hale subscribes as true under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am an attorney duly admitted to the Bars of the State of New York and the United States District Court for the Western District of New York. I am a Staff Attorney at the Empire Justice Center. I am one of the attorneys for Plaintiffs and the proposed Plaintiff class. I am fully familiar with the facts herein.

2. I make this declaration in support of Plaintiffs' Motion for Preliminary Injunction enjoining Defendant from enforcing New York Soc. Serv. Law § 365-a(2)(g)(iii) and (iv) in the absence of a system that permits physicians to make an individualized showing that orthopedic footwear and compression stockings are medically necessary for their patients and

without providing legally required due process protections for those beneficiaries whose requests are denied.

3. Plaintiffs' counsel contemplate that no facts will be in contention in this case and that the issue will be resolved as a matter of law. We therefore anticipate that no evidentiary hearing will be necessary to resolve the preliminary injunction motion. Should Defendant contest any of the underlying facts, Plaintiffs' counsel will provide a list of witnesses and exhibits to be presented at the preliminary injunction hearing as well as a brief summary of the anticipated testimony of such witnesses at that time.

4. Early in 2011, the New York State legislature enacted New York Soc. Serv. Law § 365-a(2)(g)(iii) and (iv), eliminating coverage of compression stockings and orthopedic footwear for all Medicaid recipients who do not meet one of a few statutorily prescribed exceptions.

5. Orthopedic footwear is only covered for children under the age of 21 to address growth and development problems; as part of a comprehensive treatment of people with diabetes for peripheral neuropathy; and as in integral part of a lower limb orthotic brace. N.Y. Soc. Serv. Law § 365-1(2)(g)(iii).

6. Similarly, compression stockings are only covered for pregnant women and people with venous stasis ulcers. N.Y. Soc. Serv. Law § 365-1(2)(g)(iv).

7. Defendant then promulgated a regulation to implement these new restrictions, eliminating coverage of medically necessary orthopedic footwear and compression stockings for most— but not all—Medicaid recipients. 18 N.Y.C.R.R. § 505.5(g)(1) and (2).

8. The regulation expressly prohibits any exceptions to the new limitations, no matter how severe the underlying condition or how dire the consequences of foregoing these treatments. 18 N.Y.C.R.R. § 505.5(g).

9. Defendant made extraordinary efforts to communicate the new limits to the doctors, who prescribe the medically necessary care, and the suppliers, who fill those prescriptions, of the new limits on coverage by issuing several *Medicaid Updates* and *Provider Updates for Pharmacy and DME Providers*.

10. Defendant never notified any beneficiaries of its decision to eliminate coverage for most beneficiaries, even when Defendant had covered these medically necessary items for them for years. Plaintiffs only learned of Defendant's decision when they tried to have their prescriptions filled and suppliers then informed them that Medicaid would no longer cover the medically necessary orthopedic footwear and compression stockings for these beneficiaries.

11. Defendant never informed Plaintiffs that there were exceptions to the elimination of coverage for orthopedic footwear and compression stockings, and they never informed them of their right to request a fair hearing regarding the denial of coverage under any of the available exceptions.

12. Thus, Medicaid beneficiaries who do not already meet one of the exclusive medical conditions that would avail them of an exception have no opportunity to obtain coverage by Medicaid of either compression stockings or orthopedic footwear – even where, as here, the Medicaid recipients' medical doctors determine these treatments to be medically necessary to treat potentially life-threatening or disabling conditions.

13. Plaintiffs therefore bring this action on behalf of themselves and those similarly situated to redress the deprivation of statutory and constitutional rights pursuant to 42 U.S.C. § 1983, and under the Supremacy Clause of the United States Constitution, art. VI, cl. 2, to challenge:

3

a.   Defendant's failure to provide medically necessary compression stockings and orthopedic footwear except to those with enumerated medical conditions without any process for assessing individual medical necessity in violation of Federal Medicaid laws and regulations;

b.   Defendant's failure to provide Plaintiffs with notice of its determinations not to cover their medically necessary orthopedic footwear and compression stockings in violation of Federal Medicaid laws and regulations and of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution;

c.   Defendant's failure to provide an opportunity for Plaintiffs to contest the denials in violation the Due Process clause of the Fourteenth Amendment to the U.S. Constitution and federal laws and regulations;

d.   Defendant's failure to provide services in the most integrated setting to qualified persons with disabilities in violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act; and

e.   Defendant's discriminatory policy against qualified persons with disabilities in violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

## PLAINTIFFS WILL BE IRREPARABLY HARMED BY DEFENDANT'S FAILURE TO PROVIDE MEDICALLY NECESSARY ORTHOPEDIC FOOTWEAR AND COMPRESSION STOCKINGS.

14. Plaintiffs suffer from a variety of disabling conditions, including multiple sclerosis, paralysis, peripheral neuropathy, lymphedema, and transmetatarsal amputation.

15. Plaintiffs' physicians have identified either orthopedic footwear or compression stockings as medically necessary to control or remedy serious medical conditions and to prevent the

4

potentially catastrophic or even fatal consequences that will likely follow without these essential treatments. Declaration of Dr. Carlos M. Swanger, M.D. ("Dr. Swanger Decl."), ¶¶ 4, 11-14; Declaration of Dr. David E. High, D.P.M. ("Dr. High Decl."), ¶¶ 4, 6, 7; Declaration of Dr. Samuel Pejo, M.D., F.A.C.S. ("Dr. Pejo Decl."), ¶¶ 14, 15; and Declaration of Dr. Bahram Dowlatshahi, M.D. ("Dr. Dowlatshahi Decl."), ¶¶ 9, 10.

16. Plaintiff Harry Davis suffered a transmetatarsal amputation of both feet roughly ten years ago as the result of complications related to bacterial memingitis. As a result, Mr. Davis is left with stumps instead of feet. Davis Dec. ¶ 5; Dr. Swanger Decl. ¶ 3.

17. Mr. Davis requires specially molded shoes in order to walk. Davis Decl. ¶¶ 16, 21, 30, and 31. Without the shoes, not only would Mr. Davis require a wheelchair for mobility and have to move out of his current home, but he would likely suffer additional health consequences including ulceration of the skin, infections, and likely further limb loss. Davis Decl. ¶ 31; Dr. Swanger Decl. ¶¶ 11-13. Mr. Davis thus also faces likely institutionalization as a result of Defendant's refusal to cover his shoes. Dr. Swanger Decl. ¶ 13.

18. For the past decade, Defendant has covered one pair of shoes a year for Mr. Davis. Davis Decl. ¶ 20; Dr. Swanger Decl. ¶ 7. Mr. Davis's current pair of shoes is more than a year old, and is fully worn out. Davis Decl. ¶ 19; Dr. Swanger Decl. ¶ 9. The pain resulting from the deterioration of his shoes now virtually entirely prevents Mr. Davis from leaving his home. Davis Decl. ¶¶ 29, 30.

19. Plaintiff Rita-Marie Geary suffers from a host of disabling conditions, including various forms of arthritis, osteoporosis, and peripheral neuropathy. Geary Decl. ¶ 4; Dr. High Decl. ¶ 3. Because she does not also happen to suffer from diabetes, Defendant now refuses to cover

5

the shoes made necessary by her peripheral neuropathy, even though they had been covered for more than a decade. Geary Decl. ¶¶ 6, 11.

20. Ms. Geary's peripheral neuropathy primarily affects her ability to balance. Dr. High Decl. ¶ 4. But the combination of her impairments dramatically increases the health risks from even the most minor falls for her. Her various forms of arthritis place her at increased risk of falling because of the increased loss of balance, and the loss of bone density caused by her osteoporosis places her at risk of broken bones and serious traumatic injury should her balance falter. Dr. High Decl. ¶ 6; Geary Decl. ¶ 16.

21. Plaintiff Patty Poole suffers from lymphedema. Poole Decl. ¶ 3; Dr. Pejo Decl. ¶ 5. The excess swelling in her legs has already caused a serious cellulitic infection that resulted in a tumor-like growth roughy twelve inches in diameter. The infection had to be treated with a course of I.V. antibiotics prior to the surgical removal of the large mass. The entire treatment required a month-long hospitalization. Poole Decl. ¶¶ 6-9; Dr. Pejo Decl. ¶¶7-11.

22. Following the hospitalization, Ms. Poole required compression stockings to control the swelling in her legs and to prevent the recurrence of dangerous infections – a situation her surgeon has described as a "medical disaster." Dr. Pejo Decl. ¶¶ 13, 14, 21.

23. Plaintiff Roberta Wallach was diagnosed with multiple sclerosis over thirty years ago. Wallach Decl. ¶ 2; Dr. Dowlatshahi Decl. ¶ 5. The continual deterioration of her abilities has left her paralyzed in the left arm and in the legs from the waist down; she only retains the use of her right arm and her mouth. Wallach Decl. ¶ 2; Dr. Dowlatshahi Decl. ¶ 6.

24. Because of the paralysis, Ms. Wallach is prone to develop deep venous thrombophlebitis and pulmonary embolism. These conditions can be fatal and must be prevented through the use of compression stockings. Wallach Decl. ¶ 5; Dr. Dowlatshahi Decl. ¶¶ 8-10.

25. When Ms. Wallach first became paralyzed in 2007, she was forced to move into a nursing home. Wallach Decl. ¶ 7. She became eligible when she entered the nursing home, and Defendant began covering her compression stockings to prevent the occurrence of life-threatening conditions. Wallach Decl. ¶ 9.

26. Defendant has covered two pair of compression stockings for Ms. Wallach every year since that time, until Defendant decided no longer to cover the stockings for Ms. Wallach, in spite of her condition and in spite of the medical necessity for preventing fatal conditions from developing. Wallach Decl. ¶¶ 9, 11.

27. On April 1, 2011, Ms. Wallach was able to move out of the nursing home and into the community with the aid of medical supports such as compression stockings. Ironically, the day she moved out of the nursing home was the same day that Defendant determined she would no longer be eligible for the compression stockings because of the new policy. Wallach Decl. ¶ 10.

28. When Ms. Wallach recently tried to obtain a replacement pair of compression stockings in January 2012, she was told they would no longer be covered. Wallach Decl. ¶¶ 13, 14. Because of the severity of her condition and the likelihood of dire consequences for doing without these medically necessary items, Ms. Wallach was forced to pay for her compression stockings out-of-pocket. Wallach Decl. ¶ 15. Without the compression stockings, Ms. Wallach will likely face institutionalization or death. Dr. Dowlatshahi Decl. ¶¶ 12, 13.

29. In the opinion of vascular surgeon Dr. Jerry J. Svoboda, M.D., F.A.C.S., the new law and Defendant's new policy "will miss the vast majority of patients who will require compression stockings. While it is clearly appropriate to cover compression stockings to aid circulation in the legs during pregnancy, it makes no clinical sense to cover compression stockings

otherwise only in cases of venous stasis ulcers. Compression stockings are best used to *prevent* such ulcers from developing in the first place. In terms of this exception, the state's policy risks encouraging patients to allow dangerous medical conditions to develop in order to receive necessary care rather than making use of effective preventive treatments to avoid such conditions in the first place." Dr. Jerry J. Svoboda Declaration ("Dr. Svoboda Decl.) ¶¶ 4-5.

30. The most common condition requiring use of compression stockings is chronic venous insufficiency (CVI). Dr. Svoboda Decl. ¶ 7. "CVI causes chronic swelling of the legs that can often weep directly through the skin. Left untreated, such excess swelling can cause life-threatening infection." *Id.*

31. "Treating these infections is far more complicated than controlling the underlying CVI.... Such infections are always hazardous for the patient. The problem with the state's new policy is that it delays use of compression stockings, which are known to *prevent* dangerous health conditions from developing, until serious medical complications have already developed, as with venous stasis ulcers. To prohibit clinically effective preventive measures until significant health hazards have occurred is irresponsible medical practice, especially where, as here, *the cost of delaying treatment far outweighs the costs of preventative treatment.*" Dr. Svoboda Decl. ¶ 10.

## PLAINTIFFS AND PLAINTIFF CLASS MEMBERS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS.

32. Because Plaintiffs have been certified disabled and qualify for Medicaid on the basis of their disabilities and limited income, they are "categorically needy" under the Federal Medicaid statute.

33. As more fully explained in the Memorandum of Law in Support of Preliminary Injunction, Federal laws and regulations require States participating in the Medicaid program to provide home health services to categorically needy Medicaid beneficiaries. These services are mandatory and include medical equipment and supplies such as the orthopedic footwear and compression stockings at issue here.

34. As more fully explained in the Memorandum of Law in Support of Preliminary Injunction, the new statute and Defendant's regulation and written policies violate the U.S. Constitution and Federal laws and regulations in the following ways:

   a. failure to provide mandatory home health benefits at the very least for all categorically needy Medicaid beneficiaries, 42 U.S.C. § 1396a(a)(10)(D);

   b. failure to provide an individualized exceptions process whereby Plaintiffs and Plaintiff class members might obtain medically necessary orthopedic footwear and compression stockings violates the reasonable standards requirement of the Federal Medicaid Act, 42 U.S.C. § 1396a(a)(17);

   c. coverage of medically necessary orthopedic footwear and compression stockings only for those Medicaid beneficiaries who happen to suffer from one of the few statutorily prescribed exceptions violates the comparability requirement of the Federal Medicaid Act by providing these benefits to some categorically needy Medicaid beneficiaries while denying these benefits to others, 42 U.S.C. § 1396a(a)(10)(B)(i);

   d. failure to notify beneficiaries of its decision to terminate medically necessary orthopedic footwear and compression stockings that Defendant had provided Plaintiffs for years violates Plaintiffs' due process rights under and the Fourteenth

9

Amendment to the U.S. Constitution and the Federal Medicaid Act, 42 C.F.R. § 431.200-.250;

e.  failure to provide medically necessary orthopedic footwear and compression stockings that would prevent unnecessary institutionalization to qualified individuals with disabilities violates the integration mandates of the Americans with Disabilities Act, 28 C.F.R. § 35.130(d), and Section 504 of the Rehabilitation Act; and

f.  the arbitrary refusal to make an exception or prior authorization process available to Plaintiffs under any circumstances discriminates against Plaintiffs on the basis of disability and violates the methods of administration requirement under the ADA, 28 C.F.R. § 35.130(b)(3), and Section 504 of the Rehabilitation Act, 28 C.F.R. § 41.51(b)(3)(i) and 45 C.F.R.§ 84.4(b)(4).

## THE BALANCE OF HARDSHIPS TIPS IN FAVOR OF PLAINTIFFS AND PLAINTIFF CLASS MEMBERS.

35. The balance of hardships weighs decidedly in favor of Plaintiffs and Plaintiff class. Plaintiffs will continue to suffer from the loss of medically necessary orthopedic footwear and compression stockings that are critical to their health, safety, and community living. Any fiscal harm that Defendant might suffer is outweighed by the harm to Plaintiffs' lives and health.

36. The costs of the individual items requested here are miniscule. According to the Medicaid DME Fee Schedule, the reimbursement rates for compression stockings are either $18.88 or $26.96. Ms. Poole's case is unusual, in that she requires custom-fitted compression stockings at an estimated cost of roughly $900. Poole Decl. ¶ 15. Ms. Wallach's experience is far more typical, and her out-of-pocket expense for the compression stockings was only $13.50. Wallach Decl. ¶ 15.

37. Similarly, because of Mr. Davis's unusual condition, he requires custom molded shoes that would cost him nearly $1,000 out-of-pocket. Ms. Geary, on the other hand, needs shoes that with a retail cost of about $130. According to the Medicaid DME Fee Schedule, however, the reimbursement rate for a custom molded shoe is $363.40, while standard shoes range from $30 to $93.84.

38. Costs for unnecessary hospitalizations resulting from the failure to use such cost-effective remedies, however, "quickly escalate into the thousands and tens of thousands of dollars." Declaration of Dr. Jerry J. Svoboda, M.D., F.A.C.S. ("Dr. Svoboda Decl.") ¶ 11. Thus, any short-term savings achieved by denying coverage of these medically necessary items will be far outweighed by the enormity of the consequent costs associated with treating the life-threatening medical complications that these inexpensive treatments might otherwise have prevented.

39. Even within the broad scope of the New York State Medicaid program, the fiscal costs to Defendant of complying with its obligations under the federal Medicaid Act are insignificant. According to the proposals prepared by the Medicaid Redesign Team that supported the changes in state law challenged here, the state would save an estimated $7.35 million in the first year from the limitations on orthopedic footwear and a mere $1 million from the limitations on compression stockings. The total projected savings of the Medicaid Redesign Team's recommendations is $2.2 billion. Thus, returning to the previous policy of actually covering medically necessary prescription footwear and compression stockings in compliance with federal law would reduce the state's projected savings by less than 0.4%. According to the Kaiser Family Foundation, the total cost for the New York State Medicaid program in 2009 (the most recent year for which data is available) was $50 billion. The costs

11

of providing medically necessary orthopedic footwear and compression stockings then, by the state's own financial estimates, amounts to a mere 0.0167% of its Medicaid expenditures.

40. Plaintiffs seek only that Defendant complies with controlling federal law, as it had prior to the changes of challenged here.  As explained in the Memorandum of Law in Support of Preliminary Injunction, state compliance with Federal requirements is no hardship for the state.

WHEREFORE, it is respectfully requested that the Court grant the relief requested and preliminarily enjoin Defendant from enforcing New York Soc. Serv. Law § 365-a(2)(g)(iii) and (iv) through its policies and regulation 18 N.Y.C.R.R. § 505.5(g).

Dated: Rochester, New York
      March 14, 2012

Respectfully Submitted,

/s/ Geoffrey A. Hale
Geoffrey A. Hale, Esq.
Empire Justice Center
1 West Main Street, Suite 200
Rochester, New York 14614
Telephone: (585) 454-4060

12