UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

HARRY DAVIS, et al.,

Plaintiffs

-vs-

NIRAV SHAH, individually and in his official
capacity as Commissioner of the New York
State Department of Health,

Defendant

_____

DECISION AND ORDER

12-CV-6134 CJS

APPEARANCES

For Plaintiffs:          Bryan D. Hetherington, Esq.
                         Geoffrey A. Hale, Esq.
                         Jonathan Feldman, Esq.
                         Empire Justice Center
                         One West Main Street, Suite 200
                         Rochester, New York 14614

                         Martha Jane Perkins, Esq.
                         Sarah Jane Somers, Esq.
                         National Health Law Program
                         101 E. Weaver Street, Suite G-7
                         Carrboro, North Carolina 27510


For Defendant:           J. Richard Benitez, Esq.
                         Office of the New York State
                         Attorney General
                         144 Exchange Boulevard, Suite 200
                         Rochester, New York 14614

INTRODUCTION

This is an action brought by Medicaid recipients to challenge New York State's decision to provide Medicaid payment for prescription footwear and compression stockings for certain medical conditions but not others.  Specifically, Plaintiffs challenge New York State Social Services Law § 365-a(2)(g)(iii), which provides Medicaid payment only for prescription footwear "used as an integral part of a lower limb orthotic appliance, as part of a diabetic treatment plan, or to address growth and development problems in children," and Social Services Law § 365-a(2)(g)(iv), which provides Medicaid payment only for compression stockings "for pregnancy or treatment of venous stasis ulcers."  Plaintiffs suffer from a variety of other illnesses that require the use of prescription footwear or compression stockings, for which New York's Medicaid program previously provided coverage, but which are not covered by the above-quoted statutory provisions.  Subsequent to Social Services Law § § 365-a(2)(g)(iii) & (iv) taking effect in 2011, Plaintiffs learned that their prescription shoes and compression stockings were no longer covered for their medical conditions, when they attempted to fill prescriptions for those items and were told by their medical suppliers that such items are now excluded from coverage.  Prior to that, Plaintiffs had no notice of the change in coverage.  Now before the Court is an application by three plaintiffs, Harry Davis ("Davis"), Rita-Marie Geary ("Geary") and Patty Poole ("Poole") (collectively "Plaintiffs"), for a preliminary injunction directing the New York State Department of Health to pay for their prescription shoes and

compression stockings pending a resolution of their claims.  The application is granted.

BACKGROUND

New York State participates in Medicaid, which "is a jointly funded Federal and state medical assistance program that was established by Title XIX of the Social Security Act [("SSA")] (42 USC §§ 1396 *et seq.*)." *Jennings v. Commissioner, N.Y.S. Dept. of Social Servs.*, 71 A.D.3d 98, 114, 893 N.Y.S.2d 103, 115 (2d Dept. 2010).  In that regard,

> Title XIX of the Social Security Act, 42 U.S.C. [ §§ ] 1396 [et seq.], authorizes each state to participate in a cooperative federal-state program for medical assistance to the needy, known as Medicaid, and to operate a medical assistance plan, subject to federal statutory and regulatory guidelines. If a state chooses to participate, it must adopt a statutory plan setting forth the coverage to be extended to recipients, including the terms upon which individuals will be eligible and it must extend benefits to those who are eligible for federally-funded financial assistance, such as recipients of Supplementary Security Income (SSI) for the aged, blind and disabled, known as the "categorically needy."

*Caldwell v. Blum*, 621 F.2d 491, 494 (2d Cir. 1980).

For purposes of this Decision and Order it is undisputed that Plaintiffs are categorically needy persons, and that 42 U.S.C. § 1396a(a)(10)(A) and 42 U.S.C. § 1396d(a)(4) together require participating states to provide such persons with "medical assistance," including "nursing facility services."  Furthermore, 42 U.S.C. § 1396a(a)(10)(D) requires participating states to provide "home health services" to any person entitled to receive "nursing facility services."  Thus, New York is required to provide Plaintiffs with "home health services," among other things. *See*,

3

42 C.F.R. § 440.210(a)(1) and 42 C.F.R. § 440.70.  Home health services include "[m]edical supplies, equipment, and appliances suitable for use in the home." 42 C.F.R. § 440.70(b)(3).  For purposes of the instant Decision and Order, it is undisputed that prescription footwear and compression stockings qualify as "medical supplies, equipment [or] appliances suitable for use in the home."

Title XIX requires states to establish "reasonable standards" for determining eligibility for medical assistance. *See*, 42 U.S.C.A. § 1396a(a)(17) (West 2012). Title XIX also contains a "comparability requirement," which provides that "the medical assistance made available to any individual . . . shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual[.]" 42 U.S.C.A. § 1396a(a)(10)(B)(I) (West 2012); *see also*, 42 C.F.R. § 440.240.  Moreover, Title XIX's regulations further warn that state Medicaid programs "may not arbitrarily deny or reduce the amount, duration, or scope of a required service under §§ 440.210 and 440.220 to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition," but "may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures." 42 C.F.R. § 440.230(c)&(d).

New York's statutory plan for providing "medical assistance for needy persons" under the Medicaid program is set forth in Article 5, Title 11 of the New York Social Services Law ("NY Soc. Serv. Law"), § 363 *et seq*.  The instant case involves NY Soc. Serv. Law § 365-a(2)(g)(iii) & (iv), which purports to limit payments for prescription footwear and compression stockings.  Specifically, the

statute states, in pertinent part:

> 2. "Medical assistance" shall mean payment of part or all of the cost of medically necessary medical, dental and remedial care, services and supplies, as authorized in this title or the regulations of the department, which are necessary to prevent, diagnose, correct or cure conditions in the person that cause acute suffering, endanger life, result in illness or infirmity, interfere with such person's capacity for normal activity, or threaten some significant handicap and which are furnished an eligible person in accordance with this title and the regulations of the department. Such care, services and supplies shall include the following medical care, services and supplies, together with such medical care, services and supplies provided for in subdivisions three, four and five of this section, and such medical care, services and supplies as are authorized in the regulations of the department:
>
> * * *
>
> (g) . . . (iii) *prescription footwear and inserts are limited to coverage only when used as an integral part of a lower limb orthotic appliance, as part of a diabetic treatment plan, or to address growth and development problems in children; and (iv) compression and support stockings are limited to coverage only for pregnancy or treatment of venous stasis ulcers*;

McKinney's Soc. Serv. L. § 365-a(2)(g)(iii) & (iv) (West 2012) (emphasis added).

The accompanying state regulations do "not allow exceptions to defined benefit limitations" concerning orthopedic footwear and compression stockings:

> (g) Benefit limitations. The department shall establish defined benefit limits for certain Medicaid services as part of its Medicaid State Plan. The department shall not allow exceptions to defined benefit limitations. The department has established defined benefit limits on the following services:
>
> (1) Compression and surgical stockings are limited to coverage during pregnancy and for venous stasis ulcers.
>
> (2) Orthopedic footwear is limited to coverage in the treatment of

5

children to correct, accommodate or prevent a physical deformity or range of motion malfunction in a diseased or injured part of the ankle or foot; in the treatment of children to support a weak or deformed structure of the ankle or foot; as a component of a comprehensive diabetic treatment plan to treat amputation, ulceration, pre-ulcerative calluses, peripheral neuropathy with evidence of callus formation, a foot deformity or poor circulation; or to form an integral part of an orthotic brace.

18 NYCRR § 505.5(g)(1) & (2).

Plaintiffs do not suffer from the conditions covered by Soc. Serv. L. § 365-a(2)(g)(iii) & (iv) or 18 NYCRR § 505.5(g). Instead, Plaintiffs suffer from conditions including multiple sclerosis, paraplegia, lymphedema, cellulitis, psoriatic arthritis, and trans-metatarsal amputation, for which their doctors have prescribed either orthopedic footwear or compression stockings. Complaint [#1] at ¶¶ 2-7. For purposes of the subject motion, it is undisputed that,

[w]ithout these medically necessary treatments, [Plaintiffs] face a high likelihood of hospitalizations to address life-threatening infections and other preventable conditions. As a result of Defendant's policy and regulation, [Plaintiffs] are likely to be institutionalized in nursing homes and rehabilitation centers in order to be treated for the very conditions the eliminated items would have prevented at much lower cost.

Complaint [#1] at ¶ 11.[1]

On March 14, 2012, Plaintiffs commenced the instant action. Plaintiffs maintain that Soc. Serv. L. § 365-a(2)(g)(iii) & (iv) or 18 NYCRR § 505.5(g) "violate federal Medicaid and disability discrimination laws." Complaint [#1] at ¶ 12. In that regard, Plaintiffs contend that the restrictions violate specific provisions of

---

[1] While opposing Plaintiff's motion, Defendant has not challenged Plaintiffs' factual assertions.

Title XIX, the Americans With Disabilities Act ("ADA"), and Section 504 of the

Rehabilitation Act ("Section 504").  Plaintiffs maintain that New York State has

violated four separate aspects of Title XIX: 1) the "reasonable standards" provision,

42 U.S.C. § 1396(a)(17); 2) the "comparability requirement," 42 U.S.C. §

1396a(a)(10)(B); 3) the requirement to provide home health services, 42 U.S.C. § §

1396a(a)(10)(A), 1396a(a)(10)(D) and 1396d(a)(4); and 4) the due process

requirement, 42 U.S.C. § 1396a(a)(3).  Plaintiffs further contend that the

challenged provisions discriminate against them on the basis of disability, in

violation of the ADA and Section 504.  The action seeks declaratory and injunctive

relief, attorney's fees, costs and disbursements.  Defendant has filed an Answer

[#13] with a number of affirmative defenses.  As one affirmative defense,

Defendant contends that the claims raised under Title XIX "do not provide for a

right of action pursuant to either [42 U.S.C.] § 1983 or the 'supremacy clause' of

the U.S. Constitution." Answer [#13] at p. 4.

On March 27, 2012, Plaintiffs filed the subject application for preliminary

injunctive relief [#8].[2]  Although the Complaint does not mention the statute,

Plaintiffs contend in their moving papers that their claims under Title XIX arise

under Section 1983, as well as the Supremacy Clause. *See*, [#8-1] at ¶ 3.  In

support of the application, Plaintiffs maintain that they will suffer irreparable harm if

---

[2]The application states that it is seeking a temporary restraining order ("TRO"), which by definition is a form of injunctive relief that is ordered prior to a hearing.  The Court issued a briefing schedule and set the matter down for a preliminary injunction hearing, which was held on April 20, 2012. See, Order [#10].  Accordingly, the subject application is for a preliminary injunction, not a TRO, since the Court has heard argument on the matter.

Defendant is not required to provide them with orthopedic shoes and compression stockings.  More specifically, Plaintiffs contend that the items are necessary to prevent problems such as swelling, infections and blood clots, which could lead to infection and even death, or which could result in Plaintiffs being placed into wheelchairs and/or nursing homes.  Plaintiffs argue that the denial of Medicaid benefits  under these circumstances is *per se* irreparable harm.

Additionally, Plaintiffs contend that they are likely to succeed on the merits of their claims.  And finally, Plaintiffs state that providing the shoes and stockings would not impose a hardship on Defendant.

In opposition to the motion, Defendant first contends that the Court should not grant the relief requested, since it would involve ordering mandatory relief, as opposed to merely preserving the status quo.

Alternatively, Defendant maintains that the Court should deny the application because Plaintiffs have not shown that they are likely to succeed on the merits.  On this point, Defendant argues that Plaintiffs' first three claims brought under Title XIX cannot succeed, since neither Section 1983 nor the Supremacy Clause provides a private right of action under the specific sections of law upon which Plaintiffs rely. (Namely, the "reasonable standards" provision, 42 U.S.C. § 1396(a)(17), the "comparability requirement," 42 U.S.C. § 1396a(a)(10)(B) and the requirement to provide home health services, 42 U.S.C. § § 1396a(a)(10)(B), 1396a(a)(10)(D) and 1396d(a)(4)).

Defendant further contends that Plaintiffs' fourth claim under Title XIX, the

8

procedural due process claim brought pursuant to 42 U.S.C. § 1396a(a)(3), cannot

succeed since "the public's 'notice' or awareness of the proposed changes [to New

York's Medicaid law concerning prescription footwear and compression stockings]

was accomplished in the political process accompanied by the bill's passage

through the state legislature." Def. Memo of Law [#11] at 4 (citing *Himes v.*

*Sullivan*, 806 F.Supp. 413 (W.D.N.Y. 1992)).  Defendant also argues that

Plaintiffs' ADA and Section 504 discrimination claims lack merit.

On April 20, 2012, counsel for the parties appeared before the undersigned

for oral argument.

DISCUSSION

The standard to be applied when considering an application for preliminary

injunctive relief is well settled:

> A party seeking a preliminary injunction ordinarily must show: (1) a
> likelihood of irreparable harm in the absence of the injunction; and (2)
> either a likelihood of success on the merits or sufficiently serious
> questions going to the merits to make them a fair ground for litigation,
> with a balance of hardships tipping decidedly in the movant's favor.

*Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008) (citations omitted).  Moreover,

> where [as here,] a preliminary injunction is sought against government
> action taken in the public interest pursuant to a statutory or regulatory
> scheme, the less-demanding "fair ground for litigation" standard is
> inapplicable, and therefore a "likelihood of success" must be shown.
> This higher standard reflects judicial deference toward legislation or
> regulations developed through presumptively reasoned democratic
> processes.  An even more rigorous standard—requiring a "clear" or
> "substantial" showing of likelihood of success—applies where "(i) an
> injunction will alter, rather than maintain, the status quo, or (ii) an
> injunction will provide the movant with substantially all the relief

sought and that relief cannot be undone even if the defendant prevails
at a trial on the merits.

*Forest City Daly Housing, Inc. v. Town of North Hempstead*, 175 F.3d 144,

149-150 (2d Cir. 1999) (citations and internal quotations omitted).

At the outset, the Court disagrees with Defendant, both as to whether

Plaintiffs are seeking a return to the status quo, and as to whether the relief being

sought is a mandatory injunction.  First, a return to the *status quo ante* does not

merely refer to the point immediately prior to the lawsuit, but refers to the point

prior to the parties' dispute arising. *See, e.g., Asa v. Pictometry Intern. Corp.*, 757

F.Supp.2d 238, 243 (W.D.N.Y. 2010) ("[T]he court's task when granting a

preliminary injunction is generally to restore, and preserve, the status quo ante, *i.e.*,

the situation that existed between the parties immediately prior to the events that

precipitated the dispute. The 'status quo' to be preserved by a preliminary

injunction is the last actual, peaceable uncontested status which preceded the

pending controversy.") (citations omitted).  Here, the status quo ante would be the

point in time prior to the challenged statute taking effect, when New York still paid

for Plaintiffs' orthopedic shoes and compression stockings. *See, LaRouche v. Kezer*,

20 F.3d 68, 74 (2d Cir. 1994) ("To preserve the status quo a court may require the

parties to act or to refrain from acting.  For example, in *Christopher P.*[*v. Marcus*,

915 F.2d 794, 804–05 (2d Cir.1990), *cert. denied*, 498 U.S. 1123, 111 S.Ct.

1081, 112 L.Ed.2d 1186 (1991)] the TRO that "simply preserve[d] the status quo"

directed the State of Connecticut to readmit plaintiff to its school for mentally

10

disturbed children after having discharged him. 915 F.2d at 805." ) (footnote omitted).

Furthermore, the Court views the injunction being sought as prohibitory, rather than mandatory, since it merely seeks to restore and maintain the relationship that existed between the parties prior to the enactment of the challenged statute. *See, Phillip v. Fairfield Univ.*, 118 F.3d 131, 133-134 (2d Cir. 1997) (Preliminary injunction that required NCAA to reverse its disciplinary sanction and allow student athlete to play basketball and receive scholarship during pendency of action was prohibitory, not mandatory, since it permitted the student and university to continue the relationship that they had prior to the NCAA intervening).  Nor, as this Court explained during oral argument, would the granting of the application provide Plaintiffs with all of the relief that they seek in this action, which could not be undone if Defendant was to ultimately prevail. *See, id.* Accordingly, Plaintiffs are not required to make the more demanding showing required when seeking a mandatory injunction.

Turning to the merits of the application, Defendant does not contend that Plaintiffs have failed to demonstrate irreparable harm, nor does he dispute Plaintiffs' contention that the balance of hardships tips strongly in their favor.  Accordingly, the issue for the Court is whether Plaintiffs have demonstrated a likelihood of success on the merits of their claims.  Although Plaintiffs have asserted several different causes of action, they only need to demonstrate a likelihood of success on one of them in order to obtain the relief they seek. *See, Eve of Milady v. Impression Bridal, Inc.*, 957 F.Supp.

11

484, 487 (S.D.N.Y. 1997) ("Where a plaintiff seeks a preliminary injunction and asserts

multiple claims upon which the relief may be granted, the plaintiff need only establish a

likelihood of success on the merits on one of the claims.") (citation omitted).

Arguably, Plaintiffs' strongest claim is their Section 1983 claim to enforce 42

U.S.C. § 1396a(a)(10)(D), which, as discussed earlier, requires participating states to

provide home health services, including medical equipment, to categorically needy

Medicaid recipients.[3]  Specifically, that section states:  "A state plan for medical

assistance must . . . provide . . . for the inclusion of home health services for any

individual who, under the State plan, is entitled to nursing facility services[.]" 42

U.S.C.A. § 1396a(a)(10)(D) (West 2012).  Plaintiffs are entitled to nursing facility

services, and therefore they are covered by § 1396a(a)(10)(D).  Simply put, Plaintiffs

maintain that prescription footwear and compression stockings are medically necessary

medical equipment which the State of New York is required to provide to them under §

1396a(a)(10)(D) and 42 C.F.R. § 440.210(a)(1) ("A State plan must specify that, at a

minimum, categorically needy recipients are furnished the following services: (1) The

---

[3]In their Reply Mem of Law [#12], Plaintiffs, sensing a tactical advantage because Defendant had purportedly responded to their Section 1983 claims but not their Supremacy Clause Claims, asked the Court to rule in their favor based on the Supremacy Clause claims, and leave the Section 1983 claims for another time. *See, id.* at pp. 8-9.  However, while Defendant may not have expressly addressed the Supremacy Clause issue in his responsive papers, he did so as part of his Answer, pointing out an apparent disagreement within the U.S. Supreme Court as to whether Medicaid Claimants may sue to enforce Title XIX under the Supremacy Clause when there is no cause of action under Section 1983. *See, Douglas v. Independent Living Ctr. of Southern California, Inc.*, 132 S.Ct. 1204, 1212, 2012 WL 555204 at *7-11 (Feb. 22, 2012) (Dissenting opinion of Justices Roberts, Scalia, Thomas and Alito; the issue was not definitively addressed by the majority, because the matter was remanded based upon changed circumstances).  Given this fact and the fact that Defendant had a very limited time to prepare a response to the motion, the Court does find, based on its analysis, that Plaintiffs have demonstrated a likelihood of success on their Section 1983 claim under 42 U.S.C. § 1396a(a)(10)(D), but makes this ruling without prejudice to the parties re-visiting the issue later in the case "after comprehensive briefing," as Plaintiffs have requested.

services defined in § . . . 440.70 [home health services.]")

42 C.F.R. § 440.230 indicates that, as to services for the categorically needy that a state is required to provide, such as home health services, "[t]he [state] agency may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures." 42 C.F.R. § 440.230(d). However, that same regulation indicates that "[e]ach service must be sufficient in amount duration, and scope to reasonably achieve its purpose," and further states that "[t]he [state] Medicaid agency may not arbitrarily deny or reduce the amount, duration, or scope of required service under § § 440.210 and 440.220 to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition." 42 C.F.R. § 440.230 § § (b)&(c). Plaintiffs maintain that the services they are receiving are not sufficient, and that they are being arbitrarily denied services because of their types of illness.

From the foregoing, it appears that Plaintiffs have demonstrated a likelihood of success on their claim under § 1396a(a)(10)(D), since they are being denied coverage of medically-necessary equipment on the basis of their particular illness, without any opportunity to request an exception.

Defendant, though, contends that Plaintiffs do not have a right to bring a private action pursuant to Section 1983 under § 1396a(a)(10). *See*, Def. Memo of Law [#11] at pp. 3-4. On this point, Defendant cites *Casillas v. Daines*, 580 F.Supp.2d 235 (S.D.N.Y. 2008), *Ravenwood v. Daines*, No. 06-CV-6355-CJS, 2009 WL 2163105 (W.D.N.Y. Jul. 17, 2009) (Siragusa, J.) and *Lankford v. Sherman*, 451 F.3d 496 (8th Cir. 2006). In each of those cases, courts found that the plaintiff did not have a right to sue

under Section 1983 to enforce a provision of Title XIX.  However, those cases are

factually inapposite.[4]

Moreover, the Court has considered this issue under the relevant principles set

forth in *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997) and *Gonzaga Univ. v. Doe*,

536 U.S. 273 (2002), and finds that 42 U.S.C. § 1396a(a)(10)(D) does provide a private

right to sue under Section 1983.  The relevant standards are clear:

> The Supreme Court . . .  clarified, in *Gonzaga University v. Doe*, 536 U.S.
> 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002), the inquiry that courts must
> undertake to determine whether a statute creates rights enforceable under
> § 1983. The Court in *Gonzaga* explained that only " rights, not the broader
> or vaguer 'benefits' or 'interests,' ... may be enforced under the authority
> of that section." *Id*. at 283, 122 S.Ct. 2268; *see also Blessing v.
> Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997)
> ("In order to seek redress through § 1983, ... a plaintiff must assert the
> violation of a federal right, not merely a violation of federal law."). The
> Court stated that the inquiry requires "a determination as to whether or not
> Congress intended to confer individual rights upon a class of
> beneficiaries" and that, "where the text and structure of a statute provide
> no indication that Congress intends to create new individual rights," there
> is no basis for a suit under § 1983. *Gonzaga*, 536 U.S. at 285-86, 122
> S.Ct. 2268.
>
> ***
>
> The Supreme Court's decision in *Blessing*, 520 U.S. 329, 117 S.Ct. 1353,
> 137 L.Ed.2d 569 (1997), as clarified in *Gonzaga*, provides three traditional
> factors that courts consider in determining whether statutory language is
> rights-creating. " 'First, Congress must have intended that the provision in
> question benefit the plaintiff.' " *Wachovia Bank*, 414 F.3d at 321 (*quoting
> Blessing*, 520 U.S. at 340, 117 S.Ct. 1353). That is, we must look to
> whether the statutory text is " 'phrased in terms of the persons benefited.'
> " *Gonzaga*, 536 U.S. at 284, 122 S.Ct. 2268 (*quoting Cannon v. Univ. of
> Chi.*, 441 U.S. 677, 692 n. 13, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)). "
> 'Second, the plaintiff must demonstrate that the right assertedly protected

---

[4]As discussed further below, *Casillas* and *Ravenwood* involved sex reassignment surgery that
was specifically excluded from coverage as to all persons by New York's Medicaid law, while *Lankford*
concerned, in pertinent part, a claim under 42 U.S.C. § 1396a(a)(17).

> by the statute is not so vague and amorphous that its enforcement would
> strain judicial competence. Third, the statute must unambiguously impose
> a binding obligation on the States.' " *Wachovia*, 414 F.3d at 321-22
> (*quoting Blessing*, 520 U.S. at 340-41, 117 S.Ct. 1353 (internal citations
> and quotation marks omitted)).

*Loyal Tire & Auto Ctr., Inc. v. Town of Woodbury*, 445 F.3d 136, 149-150 (2d Cir. 2006).

Moreover, if after applying those factors the court finds that the right is enforceable

under Section 1983, this is only a presumption, which the defendant may rebut by

demonstrating that Congress has foreclosed a remedy under Section 1983:

> [E]ven where it can be demonstrated that a particular federal statute
> establishes an individual right, there is only a rebuttable presumption that
> the right is enforceable under § 1983. Because the inquiry focuses on
> congressional intent, dismissal is proper if Congress specifically
> foreclosed a remedy under § 1983. Congress may do so expressly, by
> forbidding recourse to § 1983 in the statute itself, or impliedly, by creating
> a comprehensive enforcement scheme that is incompatible with individual
> enforcement under § 1983.

*Morris-Hayes v. Board of Educ. of Chester Union Free School Dist.*, 423 F.3d 153, 159

(2d Cir. 2005) (*citing Blessing v. Freestone*, 520 U.S. at 340-41) (internal quotation

marks omitted).

Applying all of the relevant factors, the Court finds that 42 U.S.C. §

1396a(a)(10)(D) provides an enforceable right to sue under Section 1983.  The statute

categorically states that "individual" categorically-needy Medicaid recipients are entitled

to home health services under any state Medicaid plan.  The statute is therefore

phrased in terms of the persons benefited, and unambiguously imposes a binding

obligation on states that participate in the Medicaid program.

Moreover, the statute is not so vague and amorphous that its enforcement would

strain judicial competence.  As to this conclusion, Defendant presumably disagrees, since he cites this Court's prior decision in *Ravenwood*, in which the Court found, *inter alia*, that there was no private right to sue under Section 1983 to enforce 42 U.S.C. § 1396a(a)(10)(A).  The plaintiff in *Ravenwood* claimed that the State of New York was violating § 1396a(a)(10)(A), because New York's Medicaid law expressly prohibited payment for "gender reassignment (also known as transsexual surgery)."

In *Ravenwood*, this Court found that § 1396a(a)(10)(A) did not grant a private right to sue under Section 1983 for such surgery, in part because, as discussed above, 42 C.F.R. § 440.230(d) permits states to place unspecified "appropriate limits" on services, which, the Court found, rendered § 1396a(a)(10)(A) "vague and amorphous." *Ravenwood*, 2009 WL 2163105 at *7 (*quoting Casillas v. Daines*).  Section 1396a(a)(10)(A) and § 1396a(a)(10)(D) are substantially similar, and both are interpreted in light of 42 C.F.R. § 440.230(d).

Nevertheless, to the extent that Defendant maintains that the Court's decision today is inconsistent with *Ravenwood* (and *Casillas*, both of which involved a claim for transsexual surgery under § 1396a(a)(10)(a)), the Court disagrees, since those cases involved radically different sets of facts.  For example, Plaintiffs here are seeking medical equipment that is readily provided to some but not all categorically needy persons under the state law, while the plaintiffs in *Ravenwood* and *Casillas* were seeking sex reassignment surgery that was not provided to anyone under the state medicaid law.  Other courts have upheld a state's decision to exclude sex reassignment surgery from Medicaid coverage. *See, Smith v. Rasmussen*, 249 F.3d

16

755, 761 (8th Cir. 2001) ("In the light of the evidence before the Department questioning the efficacy of and the necessity for sex reassignment surgery, given other treatment options, we cannot conclude as a substantive matter that the Department's regulation is unreasonable, arbitrary, or inconsistent with the Act[.]").

The Court is also aware that its interpretation of 42 C.F.R. § 440.230(d) in *Ravenwood*, as being inconsistent with a private right of action under Section 1983, is not shared by most Courts, which, in finding a private right of action under § 1396a(a)(10), have implicitly found that the regulation is not "vague and amorphous." *See, e.g., Bontrager v. Indiana Family and Soc. Servs. Admin.*, — F.Supp.2d —, 2011 WL 5386646 at *4 (N.D.Ind. Nov. 4, 2011) ("[V]irtually every court that has addressed the enforceability of 42 U.S.C. § 1396a(a)(10) has held that it meets the *Blessing* standard and is privately enforceable.") (collecting cases).

As for the third *Blessing/Gonzaga* factor, the Court finds that § 1396a(a)(10)(D) unambiguously imposes a binding obligation on the states. Moreover, Defendant has not demonstrated that Congress has foreclosed a remedy under § 1983.  Accordingly, the Court finds, for purposes of this Decision and Order, that Plaintiffs have a right to sue to enforce 42 U.S.C. § 1396a(a)(10)(D) under Section 1983, and further, that they have demonstrated a likelihood of success on that claim, inasmuch as they are being denied coverage for medically-necessary equipment that is included within Title XIX's definition of home health services.

17

CONCLUSION

Plaintiffs' application for preliminary injunctive relief [#8] is granted.

Defendant is enjoined from denying Medicaid coverage to Harry Davis and Rita-Marie Geary, for prescription footwear, and to Patty Poole, for prescription compression stockings, pending a further order of this Court.

So Ordered.

Dated:      Rochester, New York
            May 2, 2012

                         ENTER:


                          /s/ Charles J. Siragusa
                         CHARLES J. SIRAGUSA
                         United States District Judge